Leon ALCORN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Oct. 28, 1977.

Rehearing Denied Dec. 9, 1977.

Jack Emory Farley, Public Defender, Kevin M. McNally, Frankfort, and M. Gail Robinson, Asst. Public Defenders, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

On August 30, 1976, Leon Alcorn, the appellant herein, was convicted in the Fayette Circuit Court of first-degree sodomy, of third-degree assault, and of being a third-time felony offender. *Cf.* KRS 510.-070, 508.030 and 532.080(2). He was sentenced to terms of 12 months, 10 years and 50 years' imprisonment, respectively, the penalty for the assault conviction to run concurrently with the persistent felony offender penalty, which, pursuant to KRS 532.080(1), was imposed in lieu of the sodomy sentence.

The chain of events which culminated in appellant's assault and sodomy convictions

occurred during May 1976 in the Fayette County jail, where appellant was serving time for a prior felony conviction. The evidence presented by the Commonwealth established that during the day in question, appellant approached a fellow inmate, Bobby Joe Ousley, about engaging in sex with appellant. Ousley rejected this initial proposal, and persistently resisted similar sexual advances by appellant throughout the day. Finally, around eight o'clock in the evening, appellant went to Ousley's cell and told Ousley to come outside; when Ousley did so, appellant began hitting him and knocked him to the floor of his cell. Ousley's attempts to pull himself underneath a bunk for protection were futile, as appellant kicked him in the face, chest, and back, breaking his eardrum, bruising his ribs, and blackening both of his eyes.

Appellant eventually stopped this barrage and threatened Ousley that if he refused to have sex with appellant he would get another beating. Upon appellant's insistence, Ousley then took his mattress from the cell in which he had been staying with three other prisoners and moved into a back cell with appellant and another inmate, who was ill. Appellant and Ousley talked for almost two hours, at which time guards came by and locked the prisoners into the cells. Shortly thereafter, as Ousley lay on a bed, appellant pulled Ousley's pants off, rolled him onto his stomach, and engaged in anal intercourse with him. Although he did not wish to engage in such an act, Ousley submitted without a struggle because of his fear of appellant and because he had been incapacitated by the injuries he had received earlier in the evening.

Approximately 30 minutes to an hour later, Lt. Comdr. Clayton Warner came by the cell during a check on the sick prisoner and noticed Ousley's battered and bruised condition. Warner sent Ousley to the University of Kentucky Medical Center, where his wounds were treated and a rectal smear was taken. A subsequent analysis of the smear indicated a high sperm cell count.

Following the rendering by the jury of guilty verdicts on the assault and sodomy charges, the persistent felony offender portion of the bifurcated trial took place. During this proceeding, the prosecution established that appellant had previously been convicted of storehouse breaking and receiving stolen property, both felony offenses.

Appellant in his defense admitted fighting with Ousley, but completely denied participating in sex, attempting instead to show that Ousley had fabricated the story about the rape in order that he might sue the prison and recover money damages. He in no way contested the evidence offered by the Commonwealth during the persistent felony offender proceeding regarding his prior felony convictions.

■ Appellant now prosecutes this appeal, presenting seven assignments of error in his well-argued brief. Appellant first argues that the court below erred by permitting Tipp Earls Jr., one of appellant's cellmates at the time of the incident in question, to testify over defense counsel's objection that Ousley "didn't actually want to go" to appellant's cell after the fight. Appellant asserts this statement should not have been admitted into evidence because it was a mere conclusion outside the realm of Earls' knowledge, and further asserts it greatly prejudiced appellant, since it supported Ousley's testimony that he did not go to appellant's cell willingly.

Although we express some doubt, in light of the context in which this statement arose, that Earls' statement was anything more than an observation on Earls' part that Ousley appeared hesitant to go to appellant's cell,[1] we need not belabor this

---

1. The statement of which appellant now complains was elicited by the prosecutor during the following colloquy with the witness:

D34 I believe you stated that Ousley came back and got his mattress. Is that correct?
A Right.

D35 Now, at the time he came back to get his mattress, did he appear to be frightened?
A Well, in a way he was, yes.
D36 What do you mean, "in a way?"
A Well, the way he come in there, he was all white and shaky and he said that he didn't

point. For it is our conclusion that even if the admission of this statement into evidence was error, it does not warrant a reversal of appellant's conviction, since we do not believe the result would have been any different in the absence of this statement.

Appellant next argues that he was prejudiced when the trial court admitted into evidence the statement of Irving Comley, another of appellant's cellmates, that although he had not himself seen what occurred between appellant and Ousley in the back cell, he afterwards heard appellant and Stanley Murphy, the sick inmate, "boasting and bragging about it." Although admitting that Comley's remark concerning appellant's own boasts was admissible under the exception to the hearsay rule regarding admissions by a party, appellant contends that Comley's comment with respect to the boasts of Murphy was inadmissible as hearsay. We agree that this statement should not have been admitted into evidence, but decline appellant's invitation to overturn his conviction on this ground, as we do not believe this remark could have significantly affected the jury's determination of guilt.

Appellant's third assignment of error presents an interesting question in connection with the presentencing procedures embodied in KRS 532.050, which provides in pertinent part:

(1) No court shall impose sentence for conviction of a felony, other than a capital offense, without first ordering a presentence investigation after conviction and giving due consideration to a written report of such investigation.

.    .    .    .    .

(4) Before imposing sentence, the court shall advise the defendant or his counsel of the factual contents and conclusion of any presentence investigation or psychiatric examination and afford a fair opportunity and a reasonable period of time, if the defendant so requests, to controvert them. The sources of confidential information need not, however, be disclosed.

It will be remembered that just this year we held that under this statute a trial judge has no discretion in determining whether or not a presentencing report will be requested, obtained or considered; that a strict adherence by the trial court to the requirements of the statute is in fact a "prerequisite to the entry of a valid judgment." *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474, 476 (1977). We are called upon today to determine whether a defendant may waive these procedures and, if he may, whether such a waiver must be understandingly made.

Both appellant and the Commonwealth agree that the presentencing procedures set forth by the statute may be waived by a criminal defendant, and we concur. The requirements of KRS 532.050 were established primarily for the benefit of the accused, and he should be allowed to forego those procedures if he so chooses.

In the instant case, the waiver by appellant occurred during the following course of events. Immediately after the return of the jury's verdict at the close of the persistent felony portion of appellant's bifurcated trial, the trial judge indicated that entry of judgment should be postponed pending a presentence investigation. The following discussion then ensued among appellant, his trial counsel, and the court:

[DEFENSE COUNSEL]: Your Honor, the defendant has indicated he would like to waive the sentencing hearing.

THE COURT: Do you want to do that, Mr. Alcorn?

MR. ALCORN: Yes, sir, buddy.

THE COURT: You want to be sentenced today?

MR. ALCORN: Yes, sir. Hey, can I ask you something right quick?

have no help in there, that he had to go back there.
D37 Did he appear to want to go back to the other cell?

A No, he didn't actually want to. [T. E., pp. 42–43]

THE COURT: Yes.

MR. ALCORN: Like, you know like I have been over there 12 months and I aint had no luck at all. Could you have me in the penitentiary before Thursday?

THE COURT: That would be up to the Sheriff, Mr. Alcorn. I will do my best. [T. E., p. 148]

Appellant asserts that this waiver was invalid because he was not aware of his right to full compliance with the presentencing directives of the statute; in so doing, appellant urges this court to adopt an "understanding waiver" rule. Because we are of the opinion that the waiver by appellant was in fact understandingly made, we deem it unnecessary to pass on this question at this time.

The alleged errors which form the bases for appellant's arguments I, IV, V and VII, and most of argument II, were not properly preserved for appellate review. *Cf.* RCr 9.22. As we are convinced, after examining each of these arguments on its face, that the errors alleged therein either were not errors at all or, if they were errors, were not unduly prejudicial to appellant, we choose not to review these assignments of error under our manifest injustice standard.

The judgment is affirmed.

All concur.