**Michael KNOX, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000816–MR.

Supreme Court of Kentucky.

March 22, 2012.

892

Bruce P. Hackett, Chief Appellate Defender, Daniel T. Goyette, Louisville Metro Public Defender, Office of the Louisville Metro Public Defender, Public Defender Advocacy Plaza, Louisville, KY, for appellant.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Michael Knox, entered pleas of guilty, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to eight counts of second-degree robbery, for which he was sentenced to a total term of imprisonment of twenty-years. He now appeals that sentence as a matter of right. Ky. Const. § 110(2)(b). Knox argues that the trial court sentenced him without exercising independent judicial discretion in a manner very similar to the process we found unacceptable in *McClanahan v. Commonwealth,* 308 S.W.3d 694 (Ky.2010). Specifically, he contends that upon entry of his guilty plea, the trial court committed itself to the imposition of a specific sentence, and that upon final sentencing, the trial court failed to comply with KRS 532.050, RCr 11.02, and KRS 533.110(1) by imposing the sentence without considering the relevant facts and circumstances. We agree, and therefore we reverse his sentence and remand for a new sentencing hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In exchange for Knox's guilty pleas, the Commonwealth agreed to recommend a sentence of ten years' imprisonment on each of eight counts of second degree robbery, to run concurrently, for a total of ten years. However, the plea agreement further provided that, until the sentencing hearing, Knox would be released on home incarceration subject to the conditions of a "hammer clause." As used in this context, a hammer clause is a provision in a plea agreement which, in lieu of bail, allows the defendant, after entry of his guilty plea, to remain out of jail pending final sentencing. Generally, a hammer clause provides that if the defendant complies with all the conditions of his release and appears for the sentencing hearing, the Commonwealth will recommend a certain sentence. But, if

he fails to appear as scheduled or violates any of the conditions of his release, a specific and substantially greater sentence will be sought.

In this case, the hammer clause provided that if Knox failed to appear for final sentencing, incurred any new criminal charges, or violated the conditions of the home incarceration program, his sentence would be twenty years in prison, rather than ten years.[1] Among the conditions of home incarceration was the requirement that Knox abstain from the consumption of alcohol in any form, including medicinal solutions such as cough syrup and cold medications, and that he remain at his residence at all times, which would be monitored by a transmitter attached to his ankle.

As discussed below, we have concerns about the trial court's plea colloquy with Knox, but nonetheless, it adequately satisfied the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Thus, the convictions based upon Knox's guilty pleas are valid, and he does not suggest otherwise. Following the entry of his plea, a pre-sentence investigation was ordered pursuant to KRS 532.050(1) and a date for the sentencing hearing was set.[2]

Before the sentencing date, Knox's ankle monitor signaled that he was "out of range." A few minutes later, a home in-carceration officer telephoned Knox's home and spoke with Knox, who claimed he had not left the residence but had just been standing in the doorway.[3] A few hours later, a home incarceration officer visited Knox's home and detected the odor of alcohol on Knox's breath, which the officer described as the smell of "old beer." A portable breath test indicated Knox's blood alcohol content was .042%.[4] Knox denied drinking any alcoholic beverages and accounted for the alcohol in his system by saying that he had taken Nyquil and Robitussin for a cold. He was then taken into custody.

Based on the alleged violations, at sentencing the Commonwealth recommended the twenty-year sentence pursuant to the hammer clause. Knox denied violating the conditions of his release but conceded that the consumption of alcohol, even in medicinal form, was banned under the home incarceration program. Knox asked the judge to consider the imposition of a sentence other than twenty years as called for under the hammer clause. From the evidence presented at a brief hearing, the trial court determined that Knox had violated the terms of the hammer clause by leaving his residence for nine minutes and by consuming enough alcohol, regardless of its source, to register a significant level on the breath tests. The judge noted that Knox had agreed to the hammer clause

1. Pursuant to KRS 532.110(1)(c), twenty years was the maximum sentence possible for the crimes that Knox pled guilty to. The plea agreement did not specify whether the Commonwealth would recommend a specific arrangement of concurrent and consecutive sentencing among the eight charges to achieve the twenty-year sentence. At sentencing, the Commonwealth simply recommended twenty years to serve.

2. We have held that a defendant may choose to waive the presentence investigation required by KRS 532.050(1). *See Alcorn v. Commonwealth*, 557 S.W.2d 624 (Ky.1977). Knox made no such waiver and a presentence report was prepared.

3. According to the officer's testimony, the "out of range" signal indicated that Knox was more than 35 feet from the base unit, which if accurate, placed him well outside the residence.

4. A subsequent test conducted using the breathalyzer at the jail indicated a blood alcohol content of .044%.

"and therefore, I am going to impose it." The final judgment was entered accordingly.

## II. THE TRIAL JUDGE ABUSED HIS DISCRETION BY COMMITTING TO THE IMPOSITION OF A SPECIFIC SENTENCE WITHOUT CONSIDERING THE PRESENTENCE REPORT AND WITHOUT MAKING A CASE–SPECIFIC DETERMINATION, FROM THE UNDERLYING FACTS AND CIRCUMSTANCES, THAT THE SENTENCE WAS APPROPRIATE FOR THE OFFENSES IN QUESTION

■ Knox argues that the trial judge abused his discretion by committing to the imposition of a sentence based solely on the hammer clause, and not upon information contained in the presentence report or upon a case-specific consideration of the circumstances of the crime and the history, character and condition of the defendant. Specifically, he contends that the judge used a sentencing method very similar to the process we found unacceptable in *McClanahan*, 308 S.W.3d 694.

In *McClanahan*, the defendant triggered a hammer clause in his plea agreement by violating the conditions governing his presentence release from custody. As a result, instead of a ten-year sentence, the trial court imposed a thirty-five-year sentence based upon the hammer clause. We reversed the sentence imposed in *McClanahan* for two reasons. First, the thirty-five-year sentence exceeded the maximum sentence authorized by statute, and was therefore illegal.[5] *Id.* at 702. In addition, we determined that the trial court had failed to exercise independent discretion in setting the sentence, that it had imposed a sentence of imprisonment without giving due consideration to the contents of the presentence report as required by RCr 11.02 and KRS 532.050(1), and that it had imposed the sentence of imprisonment without considering "the nature and circumstances of the crime and the history, character and condition of the defendant" as required by KRS 533.010(2).[6] We reached that conclusion largely based upon the trial judge's statements while taking the guilty plea and during the final sentencing. Upon taking the plea, the judge issued a stern warning that she would impose the hammer clause's sentence if McClanahan failed to appear for final sentencing or otherwise violated the conditions of his release. McClanahan violated the conditions. At final sentencing, the judge disclaimed responsibility for the sentencing decision, stating:

"I didn't create the time [referring to the sentence] ... Mr. McClanahan, you made the choice and I'm giving you your choice." *McClanahan*, 308 S.W.3d at 703. In reversing the sentence we stated "[b]y assuring Appellant upon acceptance of his guilty plea that should he violate the terms of his release, the full force of the hammer clause would be dropped upon him, the judge committed to the imposition of a specific sentence in a way that precluded true compliance

5. This aspect of *McClanahan* is not present here because Knox's twenty-year sentence does not exceed the range of statutorily authorized sentences.

6. The quoted section of KRS 533.010(2) is the version in effect when *McClanahan* was decided and when Knox was sentenced. The enactment of HB 463 in 2011 slightly modified this section so that it now reads, in pertinent part, "after due consideration of the *defendant's risk and needs assessment*, nature and circumstances of the crime, and the history, character, and condition of the defendant[.]" (Italics added.) The italicized phrase, added in 2011, has no effect upon any issue before the Court in this case.

with KRS 532.050(1), KRS 532.110(1), KRS 533.010(1) and (2), and RCr 11.02." *Id.* at 704.

Here, the trial judge that took Knox's guilty plea and later imposed the sentence made precisely the same mistake, using words nearly identical to those we saw in *McClanahan.* Upon taking the plea, the judge told Knox that the hammer clause was a serious matter and that if any conditions of his release were violated, "your sentence is going to be twenty years to serve." The judge reiterated, "The court is going to enforce the agreement if you violate [the conditions of release]." [7]

 This stated commitment to impose the hammer clause sentence upon any violation was echoed at the sentencing hearing. The judge characterized Knox's violations as "relatively minor" and admitted that he was "troubled by the hammer clause," and noted, "this one is quite harsh." However, when defense counsel requested that he consider some sentence other than the twenty-years called for in the hammer clause, the judge declined stating, "The court is most hesitant to get into the issue of negotiations on the plea agreement because . . . I'm not going to at this time try to decide . . . well, the amount of the hammer clause influence on the sentence that was agreed upon by the Commonwealth and the defendant in the first place, and how did it influence that at

all, that sort of thing . . . I'm just reluctant to do that." He then reminded Knox that the hammer clause was "something, Mr. Knox, you agreed to, and therefore I am going to impose it." [8] Without further comment, the judgment was entered.

KRS 533.010(2) directs the trial court, not only to *consider* "probation, probation with an alternative sentencing plan, or conditional discharge" before imposing a sentence, but to refrain from imposing a sentence of imprisonment unless, based upon "consideration of the nature and circumstances of the crime and the history, character and condition of the defendant," the court is of the opinion that:

> "imprisonment is necessary for protection of the public because: (a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime; (b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime."

RCr 11.02 and KRS 532.050(1) requires the court to give "due consideration" to the results of the presentence investigation.

 We have reviewed the record for some indication that, in fixing Knox's sen-

---

7. Knox's guilty plea was taken simultaneously with the guilty plea of a co-defendant, who also entered a plea agreement with a hammer clause. The judge stated as a reminder to both defendants, that if the conditions of release were violated, the hammer clause would be enforced: "That's it. There will be no discussion about it."

8. The Commonwealth suggests that the issue we address was not properly preserved for appellate review. We disagree. Knox's counsel specifically requested that alternatives to the hammer clause sentence be con-

sidered, and the trial court declined. As we recently stated in *Anderson v. Johnson,* 350 S.W.3d 453, 458 (Ky.2011), "One should not have to ask a court to do its duty, particularly a mandatory one." Moreover, our precedent holds that the trial court's failure to comply with the sentencing prerequisites of KRS 533.010(1) and (2) is reviewable on appeal without preservation because even defendants that have pled guilty "have the right to be sentenced after due consideration of all applicable law." *See Hughes v. Commonwealth,* 875 S.W.2d 99, 100 (Ky.1994).

tence, the trial judge might have considered something other than the plea agreement hammer clause. We find nothing that supplements the statements made in open court at the plea colloquy or the sentencing hearing. While the final written judgment makes specific findings about Knox's hammer clause violation, it says absolutely nothing that suggests compliance with any part of KRS 533.010(2) or that "due consideration" was given to the report of the presentence investigation.[9] The only reference to the presentence report that was uttered at the sentencing hearing was defense counsel's unsolicited remark that she had read the report and had no need to controvert anything in it. We therefore have no difficulty in concluding that the trial judge committed himself to enforcing the plea agreement without ever considering the content of the presentence report or "the nature and circumstances of the crime and the history, character and condition of the defendant." Not only did he base his decision entirely upon the plea agreement, he expressly declined to consider anything else, lest he "get into the issue of negotiations on the plea agreement."

■ We find it appropriate to note at this juncture: plea agreements between prosecutors and criminal defendants are a vital part in the administration of justice. They are certainly significant considerations in a judge's sentencing decisions, and often will be the most influential factor. But a plea agreement can never be the only factor weighing into the judge's sentencing decision. A plea agreement does not relieve the judge of the statutory directives with respect to sentencing and it does not supplant the judge's duty to make an independent determination of the appropriate sentence.

In *Chapman v. Commonwealth,* 265 S.W.3d 156 (Ky.2007), Justice (now Chief Justice) Minton writing for a unanimous court, clearly expressed the appropriate standard governing the trial judge's sentencing responsibility when a plea agreement has been made. In *Chapman,* the defendant entered into a plea agreement whereby he agreed to be sentenced to death. After noting that "a trial court may treat a plea agreement calling for imposition of the death penalty like other plea agreements—it must exercise discretion to determine whether the plea agreement will be accepted or rejected," Justice Minton wrote:

> [A]n acceptance (or rejection) of a guilty plea is a decision that must be made on a case-by-case basis. Before accepting *any* plea agreement, a trial court must assure itself that the agreement is legally permissible and represents an appropriate resolution and punishment for the crime(s) to which the defendant seeks to plead guilty. *Thus, a trial court abuses its discretion by automatically accepting or rejecting a guilty plea without first making the particularized and case-specific determinations that the*

9. The Commonwealth urges that we should not assume "from silence on the record that the trial court failed to consider the [report of the presentence investigation]." Shortly after the 1974 enactment of our current statutory sentencing scheme, we noted in *Brewer v. Commonwealth,* 550 S.W.2d 474, 478 (Ky. 1977) that "the record of the proceedings leading up to the entry of the judgment should clearly reflect the fact that the consideration required by KRS 533.010 had been afforded the convicted person before judgment was finally entered." We reiterate here that thirty-five-year-old cautionary advice. Moreover, as noted in the text above, the record is not silent. It speaks rather clearly, in the judge's own words, that the sentence of twenty years was based solely upon the plea agreement, and that the judge was "most hesitant" to interfere with the plea agreement.

*plea is legally permissible and, considering all the underlying facts and circumstances, appropriate for the offense(s) in question.*[10]

*Id.* at 177 (emphasis added.)

The "underlying facts and circumstances" we referred to in *Chapman* would include the contents of the presentence report required by RCr 11.02 and KRS 532.050, as well as the nature and circumstances of the specific crimes to which Knox pled guilty, and the history, character, and condition of the defendant as required by KRS 533.110. We cannot avoid the conclusion that the judge in this matter abused his discretion, as outlined in *Chapman,* because at the guilty plea hearing, before there was an opportunity to consider any of the underlying facts and circumstances, the judge announced that the sentence contained in the plea agreement would be imposed. He later imposed that sentence with an indication that no other factors had been considered. For that reason, we reverse the final judgment imposing the sentence. Because the validity of the convictions based upon Knox's guilty pleas is not called into question, we remand this case for a resentencing hearing consistent with the requirements stated above.

In *McClanahan,* 308 S.W.3d at 704, we repeated the admonition issued in *Matheny v. Commonwealth,* 37 S.W.3d 756, 759 (Ky.2001) that trial judges should follow the dictates of *Misher v. Commonwealth,* 576 S.W.2d 238 (Ky.App.1978):

The sentencing function of our courts on pleas of guilty is carried out by the judge. While the prosecutor and defense counsel, along with the defendant, may discuss and negotiate, they cannot impose sentence by agreement. Upon pleas of guilty, the purpose of this section [KRS 532.050] is clearly to furnish the court with an adequate background from which an evaluation of the defendant may be made, together with an assessment of the recommendation made by the prosecutor concerning the crimes with · which the defendant is charged, and the sentence therefor. [ ... ] The sentencing court should merely accept the plea, note the recommendation or agreement concerning sentence, and set a day certain for sentencing. No sentencing at all should be carried out until KRS 532.050 has been complied with."

■■ The Commonwealth refers to the *Matheny* admonition as a mere suggestion. We accept this opportunity to resolve that misperception: upon entry of a guilty plea, the trial court *shall not* threaten to impose a specific sentence, or announce an intention to impose a specific sentence, or otherwise commit to a specific sentence. Upon entry of the guilty plea, the sentencing court must simply accept the entry of the plea (assuming the guilty plea was made voluntarily, intelligently, and knowingly), note the recommendation or agreement concerning sentence, and set a date and time for sentencing. Certainly, in noting the terms of the plea agreement, the trial judge may ascertain that the defendant fully understands all that the agreement entails, including what the Commonwealth's recommendation is expected to be, so long as doing so does not indicate that the sentence called for in the agreement will be imposed, or that the sentence has otherwise been predetermined. The judge must remain unbiased and able to

---

**10.** From the context in which this statement was made, it is clear the phrases "accepting any plea agreement" and "accepting or rejecting a guilty plea" refer to the trial judge's decision to impose (or not to impose) the sentence contained in the plea agreement. They do not refer to the entry of the guilty plea.

render an impartial, particularized, and case-specific decision, based upon all the underlying facts and circumstances, to assure that the sentence imposed is, in the judge's discretion, appropriate for the offenses in question. That simply did not occur here.

## III. THE TRIAL COURT MAY NOT COMMIT TO THE ENFORCEMENT OF THE TERMS OF A PLEA AGREEMENT CONTAINING A HAMMER CLAUSE

Our decision to set aside the sentence imposed in this case does not depend upon the fact that the plea agreement in this case contained a hammer clause. As should be clear from our analysis, the requirements of the statutes and the duties of the trial judge that we explained in *Chapman, McClanahan,* and *Matheny* apply anytime a plea agreement, with or without a hammer clause, is presented. But a plea agreement containing a hammer clause poses inherent difficulties for the judiciary which we must address.

■ We begin by acknowledging that it is not within the purview of the judiciary to tell prosecutors and defense counsel that a hammer clause may not be part of a plea agreement. While the courts have the authority to accept or reject a plea agreement, *Hoskins v. Maricle,* 150 S.W.3d 1, 24 (Ky.2004), the making of an agreement whereby the Commonwealth binds itself to recommend a particular sentence is a power of the executive branch. *Moore v. Commonwealth,* 983 S.W.2d 479, 487 (Ky.1998) (prosecutors have broad discretion regarding what crime to charge, what penalty to seek, and whether to negotiate or accept plea bargains).

Therefore, while we do not lay down a rule barring hammer clauses from plea agreements, we do hold that a judge's commitment to impose a sentence based upon a defendant's breach of a hammer clause condition, coupled with the imposition of that sentence without proper consideration of the other relevant factors, is an abuse of judicial discretion. Thus, while we have not condemned the hammer clause concept *per se,* we are mindful that the hammer plea concept seems to promote the kind of abuse of discretion that we denounce herein. The Commonwealth concedes in this case that a hammer clause cannot be effective to promote compliance with conditions of release without the judge's threat to impose the stiffer sentence of the hammer clause. If that is true, it is just an inherent flaw in the concept of the hammer clause for which we offer no remedy. Judges cannot compromise their judicial independence and the obligations of their sentencing responsibilities to accommodate the prosecutor's need for an effective plea bargaining tool or the defendant's desire for a temporary release from custody.

As we saw in *McClanahan,* and as is apparent here, the judge who warns the defendant entering a guilty plea that specific future conduct will result in a specific sentence has drawn a line in the sand and dared the defendant not to cross it. That judge has invested his or her credibility in the outcome at final sentencing. The judge must either follow through as forewarned, regardless of what sentencing information may be presented at the sentencing hearing, or acknowledge that the threat to impose the hammer provision was hollow. That is exactly the dilemma faced by the trial judge here. He was clearly and openly troubled by the outcome, but having told the defendant in advance what the sentence would be if a violation occurred, he tied his own hands in a way that precluded true compliance with the statutory requirements. A sentence

imposed under such circumstances must be set aside on appeal.

We also see other conceptual difficulties with the hammer clause. It has been suggested that the hammer clause serves as a kind of "poor man's bail" because it is often used to permit a defendant without financial resources to be released from jail pending sentencing. It served that purpose here, although structured in the form of a release to a home incarceration program rather than a release upon bail. However, our public policy in this regard has been established by statutes and criminal rules that govern the release of defendants pending sentencing. That policy includes its own statutory penalties for violations. If a "poor man" cannot be trusted upon any of the conventional statutory forms of release, he should not be released. If he can be trusted, then the trial judge should accept the responsibility of allowing the release in accordance with the applicable statutes and rules. We cannot approve judicial participation in the use of a hammer clause that evades the legislative policies embodied in the statutory forms of presentence release and the authorized punishments for violations of those forms of release.

We also find the hammer clause concept difficult to reconcile with the principle that "the punishment should fit the crime and the criminal," which is after all, a simplified expression for the philosophical foundation of the sentencing statutes and for the judge's sentencing duty that we outlined in *Chapman*. For his eight counts of robbery in the second degree, Knox may have deserved a ten-year sentence or he may have deserved a twenty-year sentence. He may have deserved something else. It defies reason, however, to say that a ten-year sentence for his crimes of robbery was appropriate, so long as he stayed in the house and did not drink pending sentencing; but, if he left the house for a few minutes and had a drink, he deserved the twenty-year sentence. If, upon proper consideration of all the relevant facts and circumstances, one of those sentences fits his crimes, the other could not. Such widely disparate sentences, differentiated only by the minor violations described by the trial court, cannot be interchangeably just.

We do not doubt that in some instances hammer clauses may have had some positive effect. Such results, however, do not justify a departure from the proper exercise of judicial discretion or the failure to comply with statutory directives. The hammer clause generates a tension that obscures the judge's duty to decide what sentence is appropriate. The prosecutor in this case even used language reminiscent of a game of chance, when he said, "[Knox] made the decision. He took the risk and he lost." Letting the defendant "make the decision" and letting factors like drinking alcohol or going "out of range" for a few minutes, neither of which caused any collateral problem whatsoever, decide the difference between ten years in prison and twenty years fuels public cynicism of the judicial process and erodes public confidence in the ability of our courts to render fair, just, and well-reasoned sentencing decisions.

When presented with a plea agreement with a hammer clause, the trial judge should accord it no special deference, and shall make no commitment that compromises the court's independence or impairs the proper exercise of judicial discretion.

## IV. CONCLUSION

In the final analysis of this matter, we conclude that the trial judge compromised his independence and abused his discretion by imposing a sentence prescribed in the hammer clause without considering any

alternative sentence or any other relevant facts and circumstances. A sentence so imposed must be set aside. The final sentence is therefore reversed and this matter is remanded to the Jefferson Circuit Court for a new sentencing hearing, to be conducted in accordance with the applicable statutes and principles set forth herein.

MINTON, C.J., ABRAMSON, NOBLE, SCHRODER and SCOTT, JJ., concur. CUNNINGHAM, J., dissents by separate opinion.

CUNNINGHAM, J., dissenting:

I respectfully dissent. Let us remember that, in this case, the Appellant stood convicted of eight counts of robbery in the second degree and was being held on a whopping $100,000 bond. There were eight separate victims of his crimes. It is also important to point out the Appellant had originally been charged with eight counts of first-degree robbery and four counts of theft by unlawful taking. By plea agreement, the Commonwealth reduced the robberies to second degree and dismissed the theft charges.

Which of us sitting on this Court believe that on remand the trial judge is going to do anything different than he already has? What the majority does today is simply invite judges to participate in a judicial charade of prophylactic monologue. The sentencing judge can now say the magical words, "If you misbehave I will consider giving you 20 years"; and then when the hammer falls, "I've considered not doing this, but have decided that it is appropriate in your case." With those words in this case, the hammer clause is still alive and well.

The adeptly crafted majority opinion by Justice Venters is well reasoned. However, it places upon the trial judges an artificial standard of judicial reflection and deliberation in sentencing. I advocate a totality of the circumstance test rather than a mere parroting of the sentencing statute.

The majority opines that the trial court imposed the twenty-year sentence without an independent exercise of discretion. In support of this claim, it is asserted that the trial court committed to the imposition of the higher sentence at the time it accepted the plea agreement which included the hammer clause. I disagree.

This Court buys into the argument by Knox that the manner in which the trial court imposed the sentence was condemned in *McClanahan v. Commonwealth,* 308 S.W.3d 694 (Ky.2010). In *McClanahan,* the defendant violated the terms of his pre-sentencing release, triggering a hammer clause contained in the plea agreement. Accordingly, instead of a ten-year sentence, the trial court imposed a thirty-five-year sentence as indicated in the hammer clause.

Though not condemning the use of hammer clauses in plea agreements, we reversed the judgment for two primary reasons. First, the thirty-five-year sentence imposed was not statutorily authorized and, therefore, was illegal. *Id.* at 702. In addition, we determined that the trial court failed to exercise its independent discretion in sentencing. We reached this conclusion largely based on the trial court's statements at final sentencing which indicated that the judge would enforce the hammer clause regardless of counsel's arguments.

By assuring [defendant] upon acceptance of his guilty plea that should he violate the terms of his release, the full force of the "hammer clause" would be dropped upon him, the judge committed to the imposition of a specific sentence in a way that precluded true compliance

with KRS 532.050(1), KRS 532.110(1), KRS 533.010(1) and (2), and RCr 11.02. *Id.* at 704.

The circumstances of this case are unlike those in *McClanahan.* The twenty-year sentence imposed in this case is within the statutorily authorized range. A presentence investigation report was ordered and prepared, as required by KRS 532.050 and RCr 11.02. After hearing evidence as to whether a violation of the home incarceration program had occurred, the trial court asked for and considered the arguments of counsel. The sole focus of these arguments was whether the hammer clause should be enforced. Defense counsel emphasized that it was within the trial court's discretion to impose the hammer clause, and the trial court indicated no disagreement with this proposition.

I have no doubt that the trial court was aware that the decision to enforce the hammer clause was within its discretion. It is also apparent that the trial court exercised that discretion. That the trial court expressed some reservations due to the severity of the hammer clause in this case is further indication of its due consideration of the matter. Moreover, because the hammer clause essentially imposed consecutive rather than concurrent sentences, the trial court complied with the requirements of KRS 532.110.

The majority narrowly focuses on certain statements made by the trial court, rather than a comprehensive look at the totality of the circumstances surrounding his sentencing. Indeed, during the plea colloquy, the trial court impressed upon Knox that a violation of the HIP conditions meant that his sentence "would be twenty years." The trial court stated that it "would enforce the agreement" if Knox violated it "in any way." We find these statements to be an attempt by the trial court to ensure that Knox fully comprehended the seriousness of the agreement and the severity of the potential consequences. In light of the full sentencing hearing that ultimately took place, I do not interpret these statements to be an indication that the trial court had committed to a sentence.

Lastly, the hammer clause was a part of the plea agreement. If, upon remand, the trial court chooses to retreat from the twenty years in spite of the fact the defendant violated the accord, it is only fair that the Commonwealth be given the option to withdraw the plea offer, reinstate the original charges, and proceed from there. Otherwise, the Commonwealth has been deprived of the benefit of its bargain.

I detect a drift of this Court of distinguished former trial judges toward micromanaging our trial judges. I'm furthermore afraid that we have used this case to further invade the sound discretion of the trial court in fairly managing their dockets. In doing so, we do injury to the interests of both the Commonwealth and criminal defendants.

Therefore, I must respectfully dissent.