Lawrence M. WEBSTER, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2013–SC–000381–MR.

Supreme Court of Kentucky.

June 19, 2014.

Rehearing Denied Sept. 18, 2014.

Daniel T. Goyette, Louisville Metro Public Defender of Counsel, Bruce P. Hackett, Chief Appellate Defender, James David Niehaus, Deputy Appellate Defender, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Jefferson Circuit jury found Appellant, Lawrence Webster, guilty of second-degree manslaughter and of being a first-degree persistent felony offender (PFO). He was sentenced to ten years' imprisonment, which was enhanced to twenty years' imprisonment due to his status as a PFO. He now appeals as a matter of right, KY. Const. § 110(2)(b), alleging that the trial court erred by (1) phrasing the jury instructions in a manner that unfairly suggested to the jury that it had to acquit on the higher degree of homicide before considering any lesser offense and (2) reading the jury instructions at the beginning of the penalty phase instead of at the conclusion of the proof during sentencing. For the following reasons, we affirm.

## I. BACKGROUND

Appellant shared an apartment with Ja'Lissa Hopson. On the morning of October 9, 2011 at about 7:15 a.m., Ja'Lissa

roused her three-year-old son, An'Haod, took him to the bathroom, and returned him to bed. An'Haod's usual babysitter was unavailable, so Ja'Lissa asked Appellant to watch the child while she went to work.

At around 3:30 p.m., Appellant called 911 to report that An'Haod had become unresponsive. The first responders arrived to find An'Haod lying on the bedroom floor. They noticed saliva, blood, and vomit in puddles throughout the room. When the EMT attempted to resuscitate An'Haod, a frothing sputum tinged with blood spewed from the child's nose and mouth. Emergency personnel stated that the child was "lifeless the whole time [they] had him."

Appellant told one of the first responders that An'Haod was fine when his mother left for work and that he got sick after being fed some oatmeal and yogurt. Appellant further indicated that An'Haod had been up walking around the apartment, but, at some point, the child grew disoriented and needed to be put down for a nap. About an hour later, Appellant claims to have discovered the child vomiting with his eyes rolled back into his head. Appellant initially indicated to first responders that An'Haod had hit his head; however, Appellant later claimed that he had heard Ja'Lissa striking the child before she went to work.

A Jefferson Circuit Grand Jury indicted Appellant for intentional or wanton murder and for being a first-degree PFO. At trial, a medical examiner established that the child died from multiple blunt force injuries. The Commonwealth presented additional medical testimony that symptoms would develop almost immediately from such catastrophic injuries and that, contrary to Appellant's claims, An'Haod would have been unable to get up and walk around. The testimony was offered to "time-stamp" that the injuries occurred while Ja'Lissa was at work and to point out inconsistencies in Appellant's testimony that An'Haod had been walking around during the day.

At the close of the guilt phase, the jury returned a verdict finding Appellant guilty of second-degree manslaughter. After evidence was introduced during the penalty phase to establish Appellant's prior convictions, the jury also found him guilty of being a first-degree PFO and recommended that he be sentenced to twenty years' imprisonment. The trial court adopted the jury's recommendation.

## II. ANALYSIS

### A. Phrasing of Jury Instructions

Appellant first argues that the trial court erred to his substantial prejudice when it instructed the jury to consider the different degrees of homicide in a progressive fashion. Specifically, Appellant alleges palpable error resulted when the trial court instructed the jury on the offense of wanton murder first and then directed the jury to consider second-degree manslaughter or reckless homicide only if it found Appellant not guilty of murder.

The specific language complained of by Appellant is as follows:

INSTRUCTION NO. 2

MANSLAUGHTER IN THE SECOND DEGREE

If you did not find the defendant, LAWRENCE WEBSTER, guilty under Instruction No. 1, you will find the Defendant guilty under this Instruction. . . .

INSTRUCTION NO. 3

RECKLESS HOMICIDE

If you did not find the Defendant, LAWRENCE WEBSTER, guilty under Instruction No. 1 or No. 2, you will find

the defendant guilty under this Instruction . . . .

Appellant contends that these instructions direct the jury to consider and acquit him of murder before undertaking consideration of any other instruction. According to Appellant, instructions such as these tilt jury deliberations in favor of more serious offenses.

However, Appellant acknowledges that the issue was not preserved at the trial court and that he tendered instructions that were essentially the same as those given by the trial judge. A recent decision of this Court denied palpable error review when a party tenders instructions that are substantially similar to those ultimately given by the trial judge. See *Thornton v. Commonwealth,* 421 S.W.3d 372 (Ky.2013). Applying *Thornton* to the present case, Appellant's first argument is not eligible for appellate review.

Nonetheless, Appellant requests palpable error review, arguing that our decision in *Thornton* relies on RCr 9.54(2),[1] and that RCr 9.54(2) cannot be enforced in this situation because strict application of the rule would conflict with the overriding purpose of the criminal rules to "provide for a just determination of every criminal proceeding." RCr 1.04. Appellant's first argument is without merit because that portion of *Thornton* that prevents palpable review of his claim does not, in fact, rely on RCr 9.54(2). Thus, it is not necessary for this Court to examine the procedural interplay of the two rules Appellant cites.

To be clear, our opinion in *Thornton* does make reference to RCr 9.54(2), but it does so for a proposition different than that alleged by Appellant. *Thornton* uses RCr 9.54(2) to support its holding that palpable error review is not available when a party fails to ask for an instruction or to object to one that is given. *Id.* at 375–77. However, *Thornton* also separately holds that palpable error review is unavailable when a party tenders instructions that are substantially similar to those ultimately given by the trial judge. *Id.* at 376–77. *Thornton's* holding relating to tendered instructions is distinct from its holding pertaining to instructions that are unrequested or unobjected to, and it is in no way reliant on RCr 9.54(2).

In fact, our holding in *Thornton* regarding tendered instructions that are substantially identical to those given by the trial court is rooted in the concept of invited error. *Id. Thornton* explains that, when an appellant "affirmatively propos[es] an instruction that contains the very defect he now opposes," that appellant invites error. *Id.* Invited errors amount to a waiver and are not subject to appellate review. *Id.*

The procedural argument advanced by Appellant in no way undermines our rationale in prohibiting palpable error review of jury instructions when they are substantially the same as those tendered by a defendant. To the extent that there was any error in the jury instructions read by the trial court, that error was invited by Appellant. *Id.* Therefore, no further consideration of Appellant's first argument is necessary, and we will not review the language of the jury instructions for palpable error.

---

1. RCr 9.54(2) states:

No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of objection.

## B. Reading the Jury Instructions at the Start of the Penalty Phase

■ Appellant next argues that the trial court erred by reading jury instructions at the beginning of the sentencing phase rather than at the conclusion of the proof in the sentencing phase. Appellant contends that the trial judge's actions violated KRS 532.055(2)(c), which states that "[u]pon conclusion of the proof, the court shall instruct the jury on the range of punishment...."[2] According to Appellant, the trial judge's reading of the instructions at the beginning of the sentencing phase unfairly suggested that the as-yet unheard evidence of PFO status would be sufficient for the jury to impose enhanced punishment.

■ Appellant acknowledges that the issue was not preserved by a contemporaneous objection. Ordinarily, when an issue is unpreserved at the trial court, this Court will not review it unless a request for palpable error review under RCr 10.26 is made and briefed by the appellant. *Shepherd v. Commonwealth,* 251 S.W.3d 309, 316 (Ky.2008). Nonetheless, Appellant argues that we should review his unpreserved claim because our holding in *Knox v. Commonwealth,* 361 S.W.3d 891 (Ky. 2012) stands for the proposition that this Court will treat unpreserved sentencing errors as preserved when the complaining party can show the trial court failed to comply with statutory mandates. However, Appellant's argument is unavailing because *Knox's* holding was narrower than Appellant asserts, and it does not support a holding that Appellant's unpreserved error is entitled to appellate review.

■ A brief review of our jurisprudence regarding sentencing errors is necessary to address Appellant's argument that his unpreserved sentencing issue should be treated as preserved. As noted above, when an issue is unpreserved at the trial court, this Court will typically only review it for palpable error and only then upon the request of Appellant. *Shepherd,* 251 S.W.3d at 316. However, there are certain exceptions where we will automatically treat an unpreserved sentencing issue as though it was preserved for appellate review notwithstanding an appellant's failure to raise the issue before the trial court. Nonetheless, Appellant is incorrect in asserting that one such exception is when a trial court does not follow statutory mandates in sentencing. In actuality, to receive the benefit of appellate review without preservation, we require Appellant to raise a true "sentencing issue" on appeal. *Jones v. Commonwealth,* 382 S.W.3d 22, 27 (Ky.2011).

■ In *Grigsby v. Commonwealth,* we explained that "the phrase 'sentencing issues' does not refer to any issue that arguably affected the ultimate sentence imposed. Instead, it refers to a claim that a sentencing decision is contrary to statute ... or was made without fully considering what sentencing options were allowed by statute...." 302 S.W.3d 52, 54 (Ky.2010). Essentially, *Grigsby* identifies two situations where unpreserved sentencing issues

**2.** We pause here to note that this Court has previously determined that KRS 532.055(2)(c) violates separation-of-powers doctrine but that we decided to give effect to the statute as a matter of comity to the extent that it does not conflict with our own duly-enacted court procedures. *See Commonwealth v. Reneer,* 734 S.W.2d 794 (Ky.1987). Because RCr 9.54 also addresses the point at which the instructions should be read to the jury, the error alleged by Appellant (were it to have merit) would arguably be more appropriately considered as a violation of RCr 9.54 rather than KRS 532.055(2)(c). In any event, because we find that no palpable error arose from the timing of the trial court's reading of the instructions, we confine our analysis to the possible violation of the statute as the argument was presented to us by Appellant.

will be treated as preserved for appellate review purposes: (1) when a sentencing *decision* is contrary to statute or (2) when a sentencing *decision* is made without full consideration of statutory sentencing options. *Id.* Notably, those sentencing issues that are automatically treated as preserved both involve sentencing decisions and do not involve any other aspect of the sentencing phase. *See id.*

■ Considering the first situation established by *Grigsby*, we find that Appellant has failed to assert that the trial court's sentencing decision was contrary to statute. An example of a sentencing decision that is contrary to statute is the imposition of a sentence that is longer than that which is allowed by statute for the crime committed. *See Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky.1985) (reviewing unpreserved claim that defendant was erroneously sentenced to life imprisonment on each count rather than a single sentence of life imprisonment as allowed by KRS 532.080(1)). In this case, Appellant has not alleged that the court's sentencing decision of twenty years' imprisonment for second-degree manslaughter and first-degree PFO contravenes the penalty range established by statute.[3]

■ Turning to the second situation for unpreserved appellate review identified by *Grigsby*, Appellant has not alleged that the trial court's sentencing decision was made without a full consideration of the sentencing options allowed by statute. *See Grigsby*, 302 S.W.3d at 54. An example of a trial court's failure to fully consider statutory sentencing options would be the failure to take probationary options into account as required in certain situations by KRS 533.010. *See Knox*, 361 S.W.3d at 895–99; *Hughes v. Commonwealth*, 875

S.W.2d 99, 100–01 (Ky.1994). Here, Appellant has not asserted that the trial court failed to consider any sentencing options in its decision.

Rather, Appellant simply alleges that KRS 532.055(2)(c) requires the trial court to read instructions at the conclusion of proof in the sentencing phase and that the trial judge violated this statutory mandate by reading the instructions at the beginning of the sentencing phase. Thus, Appellant has not shown that his unpreserved sentencing issue fits either of the two situations announced in *Grigsby* that would entitle him to appellate review. *See Grigsby*, 302 S.W.3d at 54. Indeed, the error asserted by Appellant does not at all involve the trial court's sentencing decision as required for automatic preservation under *Grigsby*. *Id.*

The mistake Appellant perpetuates in his argument is to assert that *Knox*, which was decided after *Grigsby*, stands for the proposition that this Court will review unpreserved sentencing errors any time the complaining party can show that the trial court failed to comply with statutory mandates. This reading of *Knox* would provide for broader automatic preservation of sentencing issues than that allowed for in *Grigsby*, which is confined only to sentencing *decision* issues. In actuality, *Knox* does not go so far. It simply reiterates the second situation elucidated in *Grigsby*—that this Court will treat unpreserved sentencing issues as preserved when a sentencing decision is made without full consideration of statutory sentencing options.

■ In *Knox*, the alleged error of the trial court was its abrogation of statutorily-mandated discretion in its sentencing decision through its mechanical application of the penalty provision of a

---

**3.** The sentence imposed in this case does, in fact, fall within the range, authorized by statute. *See* KRS 532.080(6)(b); KRS 507.040(2).

hammer clause.[4] *Knox*, 361 S.W.3d at 895–99. By strictly applying the hammer clause, the trial court failed to consider the possibilities of "probation, probation with an alternative sentencing plan or conditional discharge" as required by KRS 533.010(2). *Id.* at 896. We held that no objection was necessary to preserve the trial court's error because defendants "have the right to be sentenced after due consideration of all applicable law." *Id.* at 896 n. 8. Although the actions of the trial judge in sentencing also happened to violate a statute, the real reason we granted appellate review despite the lack of preservation was that the trial judge did not fully consider statutory sentencing options in making his sentencing decision.

Contrary to Appellant's argument, not every violation of a sentencing statute by a trial judge will entitle an appellant to automatic preservation of the alleged error. Our previous cases reveal that it is not uncommon for a trial court to fail to comply with a sentencing statute but for the appellant to still only be entitled to palpable error review (if requested). In *Baumia v. Commonwealth,* an appellant alleged that facts surrounding a prior conviction were admitted during her sentencing phase in violation of KRS 532.055(2)(a). 402 S.W.3d 530, 546 (Ky. 2013). Although the appellant had alleged that the trial court had failed to comply with a statutory mandate during sentencing, we did not treat the issue as automatically preserved, and we reviewed only for palpable error. *See id.* Similarly, in *El-*

*ery v. Commonwealth,* an appellant claimed that the trial court allowed a non-relative to make a victim impact statement during sentencing in violation of KRS 532.055(2)(a)(7), yet we reviewed only for palpable error. 368 S.W.3d 78, 98 (Ky. 2012). Because Appellant has not shown that the trial court's failure to read the jury instructions at the conclusion of proof in alleged violation of KRS 532.055(2)(c) entitles him to appellate review of his unpreserved claim under *Grigsby*, we, accordingly, will not treat his claim as preserved.

■ Since Appellant has not shown that this issue should be treated as preserved for appeal, his only remaining avenue for appellate review is under the palpable error standard. *See* RCr 10.26. However, as noted above, "[a]bsent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review under RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd,* 251 S.W.3d at 316. Here, Appellant has not asked for palpable error review of this issue. Nor does his brief ever mention RCr 10.26 in relation to the issue of the timing of the trial court's jury instructions. Appellant's argument also does not state how the alleged error amounts to palpable error or how he suffered a manifest injustice at the hands of the trial court. Therefore, we abstain from any substantive analysis of his second argument.

---

4. *Knox* defined a hammer clause thusly:

[A] hammer clause is a provision in a plea agreement which, in lieu of bail, allows the defendant, after entry of his guilty plea, to remain out of jail pending final sentencing. Generally, a hammer clause provides that if the defendant complies with all the conditions of his release and appears for the sentencing hearing, the Commonwealth will recommend a certain sentence. But, if he fails to appear as scheduled or violates any of the conditions of his release, a specific and substantially greater sentence will be sought.,

361 S.W.3d at 893.

**328**

## III. CONCLUSION

For the aforementioned reasons, we affirm Appellant's convictions and sentence.

All sitting. All concur.