# IMPORTANT NOTICE

# "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: APRIL 23, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0447-MR

JUSTIN CARTER                                             APPELLANT

V.

           ON APPEAL FROM JEFFERSON CIRCUIT COURT
                HONORABLE SARAH E. CLAY, JUDGE
                     NO. 21-CR-02394-002

COMMONWEALTH OF KENTUCKY                           APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Justin Carter pled guilty in Jefferson Circuit Court to various crimes. He received a total sentence of twenty-one years at 85% parole eligibility. Carter appeals his conviction as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution asserting the trial court failed to consider the range of penalties pursuant to what he describes as a reverse hammer clause. We affirm his conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Justin Carter was indicted in Jefferson Circuit Court for offenses arising from a series of crimes occurring in 2020 and 2021. The indictment charged him with first-degree robbery, two counts of possession of a handgun by a convicted felon, second-degree escape, tampering with a prisoner-monitoring device, first-degree wanton endangerment, and misdemeanor theft. The

Commonwealth also charged two co-defendants for their involvement in several of the same incidents. The underlying offense conduct involved multiple visits to hardware and home improvement stores, during which Carter or his co-defendants displayed weapons or threatened store personnel while stealing merchandise. Because the facts of the offenses are not in dispute and are not determinative of the issue on appeal, a more detailed recitation is unnecessary.

Carter ultimately chose to plead guilty to all counts of the indictment. In connection with that plea, the Commonwealth filed a written plea offer recommending a total sentence of twenty-one years to serve at a parole eligibility of 85% due to the violent offender statute. Separately, the Commonwealth provided defense counsel with an off-record written communication proposing an alternative, more favorable sentencing recommendation if Carter complied with several conditions while awaiting sentencing. Under that proposal, the Commonwealth would recommend a total sentence of fifteen years with a twenty-percent parole eligibility, provided Carter met all conditions, including that he incur no new arrests.

Approximately one year after entering his guilty plea, and while awaiting sentencing, Carter was arrested and later indicted for new offenses involving alleged domestic violence. The new indictment charged first-degree strangulation, fourth-degree assault, third-degree terroristic threatening, and second-degree cruelty to animals.

Following Carter's arrest, disputes arose concerning the effect of the new charges on the conditional offer. Carter's counsel maintained that the trial

court retained full discretion to impose a sentence other than the twenty-one-year term contained in the original plea agreement, even if the conditions of the alternative offer were not met. The trial court conducted multiple hearings to address these issues, including whether Carter had violated the conditions necessary for the more lenient recommendation. After argument, hearing testimony from an officer, and allowing the parties to present their positions, the trial court found that Carter's arrest and indictment on the domestic violence charges constituted a violation of the condition prohibiting new arrests. The court therefore ruled that the Commonwealth's alternative sentencing proposal was no longer applicable.

Before the final sentencing hearing, the Commonwealth moved to dismiss the domestic violence indictment without prejudice. The Commonwealth explained that although the complaining witness remained cooperative, it was reluctant to proceed, and the Commonwealth believed that dismissal was appropriate in light of the lengthy sentence Carter faced in the present case. The trial court agreed.

At the sentencing hearing, the trial court imposed a total sentence of twenty-one years in accordance with the recommendation stated in the plea agreement Carter had accepted at the time of his guilty plea. In its written judgment, the trial court stated that it had considered the plea agreement, the nature and circumstances of the offenses, the contents of the presentence investigation report, and Carter's history and character, and found that Carter posed a substantial risk of committing additional offenses, that he required

3

correctional treatment, and that a lesser sentence would unduly depreciate the seriousness of the crimes. Carter later moved the trial court to reconsider the sentence, which the court denied. Carter appeals as a matter of right.

## II. ANALYSIS

Carter contends that the trial court abused its discretion by enforcing the sentencing recommendation contained in the original plea agreement without exercising independent judgment. He argues that the court's approach mirrored the error identified in *Knox v. Commonwealth*, 361 S.W.3d 891 (Ky. 2012), where the sentencing court treated a hammer clause as binding and declined to consider the full range of sentencing options permitted by law. Carter asserts that the trial court effectively predetermined his sentence before the final sentencing hearing, as reflected in its earlier statements and its written order finding him in violation of the conditional offer.

Carter emphasizes that his arrest on the domestic violence charges—the sole basis for finding a violation of the alternative offer—should not have controlled the sentencing outcome because the Commonwealth moved to dismiss that indictment at the final sentencing hearing. He argues that the dismissal constituted a significant changed circumstance that the trial court failed to meaningfully consider. In his view, the trial court's decision to impose the twenty-one-year sentence despite the dismissal demonstrates that the court did not undertake the individualized, case-specific analysis required under *Knox*. Carter further argues that the disparity between the twenty-one-year sentence and the fifteen-year alternative offered by the Commonwealth

4

underscores the need for careful sentencing discretion, particularly given the substantial difference in parole eligibility between the two alternatives.

The Commonwealth argues that the trial court acted well within its broad statutory discretion in imposing the recommended sentence. It argues that *Knox* is distinguishable because, unlike in that case, the trial court here expressly stated that it had considered the presentence investigation report, the nature and circumstances of the offenses, and Carter's history. The trial court also articulated an alternative basis for its decision by stating that, even if it had discretion to deviate from the plea agreement, it would not do so in light of the seriousness of the offenses and the information contained in the presentence report.

The Commonwealth further states that Carter clearly violated the condition requiring no new arrests in its conditional plea offer, and that the later dismissal of the domestic violence charges did not negate the fact of the arrest or render the violation inconsequential. It emphasizes that the conditional offer was premised on Carter's compliance prior to sentencing, and that dismissal of the indictment after the violation occurred did not revive the alternative recommendation. Relying on *Poore v. Commonwealth*, 709 S.W.3d 166 (Ky. 2024), the Commonwealth argues that the trial court's statements do not demonstrate predetermined sentencing, the court's written judgment reflects the required individualized analysis, and the sentence the trial court imposed was neither arbitrary nor unreasonable.

The law grants discretion to trial courts when setting criminal penalties. *Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016). Trial courts may lower sentences, grant or deny probation, and decide whether sentences run concurrently or consecutively. *Id.* Trial courts are empowered to set the sentence within the statutory range of penalties. *McClanahan v. Commonwealth*, 308 S.W.3d 694, 701 (Ky. 2010).

The presence of a hammer clause does not alter the responsibilities of a trial court when sentencing a defendant. *Knox* held that "a judge's commitment to impose a sentence based upon a defendant's breach of a hammer clause condition, coupled with the imposition of that sentence without proper consideration of the other relevant factors, is an abuse of judicial discretion." *Id.* at 900.

We review a trial court's decision to enforce a hammer clause for abuse of discretion. *Poore*, 709 S.W.3d at 169. "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

A trial court may not predetermine, at the plea colloquy, that it will enforce a hammer clause. In *Knox*, the trial court stated at the plea colloquy that it would enforce the hammer clause for any violation of bond conditions. *Knox*, 361 S.W.3d at 896. Knox was released and violated bond by drinking alcohol. At sentencing, the judge enforced the hammer clause, stating the outcome was harsh but refusing to deviate from the hammer clause. *Id.* This

6

Court reversed because the trial court predetermined to enforce the hammer clause and failed to consider the other sentencing factors. *Id.* at 900. We directed that a trial court "should accord it no special deference, and shall make no commitment that compromises the court's independence or impairs the proper exercise of judicial discretion." *Id.* By contrast, this Court has upheld the application of a hammer clause when the trial court holds a substantive hearing to meaningfully consider the defendant's sentence. *Prater v. Commonwealth*, 421 S.W.3d 380 (Ky. 2014).

This case presents an agreement that differs from a traditional hammer clause. Typically, a hammer clause in a plea agreement allows the Commonwealth to recommend a harsher sentence than the agreement calls for if the defendant fails to comply with the conditions of his bond. *Poore*, 709 S.W.3d at 170. Here, by contrast, the parties agreed at the plea colloquy to a harsher sentence—twenty-one years with 85% parole eligibility—which the trial court accepted. They also had an off the record understanding that, if Carter completed certain actions before sentencing, the Commonwealth would recommend a more lenient sentence of fifteen years at 20% parole eligibility.

We affirm the trial court's sentence in Carter's case. The trial court did not predetermine Carter's sentence. It did the opposite. The defense filed a motion asking the court to impose the more lenient sentence. The trial court held a substantive evidentiary hearing that included testimony from the officer involved in the agreement. After hearing evidence, the trial court listed to extensive arguments from both parties. Based on the information produced,

7

the trial court denied the defense motion. At final sentencing, the trial court stated it reviewed and considered the PSI and the other statutory factors, which demonstrates the court did not predetermine Carter's sentence and did not accord the hammer clause special deference. *Knox*, 361 S.W.3d at 900.

Our guidance from *Knox* holds true. We recognized that "a plea agreement containing a hammer clause poses inherent difficulties for the judiciary." *Knox*, 361 S.W.3d at 899. When presiding over a case involving a hammer clause, "[j]udges cannot compromise their judicial independence and the obligations of their sentencing responsibilities to accommodate the prosecutor's need for an effective plea bargaining tool or the defendant's desire for a temporary release from custody" or a lesser sentence. *Id*. The trial court's actions here were thoughtful, thorough, and produced a result within its discretion.

### III. CONCLUSION

We affirm the Jefferson Circuit Court's sentencing decision. Carter entered a valid guilty plea with the terms clear on the record that he agreed to a twenty-one-year sentence with 85% parole eligibility. He had an off-the-record agreement with the Commonwealth that it would recommend a more lenient sentence if he complied with certain conditions. However, Carter violated one of those conditions when he was arrested for new offenses. While the Commonwealth ultimately dismissed Carter's new charges, the Commonwealth did so because of the offer Carter had already accepted in his plea agreement. The trial court held a substantive hearing on Carter's motion

8

requesting a more lenient sentence that included taking evidence and hearing argument. The trial court stated orally and in writing that it considered the relevant sentencing factors when imposing the previously mutually agreed-upon sentence. The trial court appropriately exercised its discretion.

All sitting.  All concur.


COUNSEL FOR APPELLANT:


Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

James Havey
Assistant Attorney General