**Linvil Curtis TURPIN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000550–MR.

Supreme Court of Kentucky.

Sept. 22, 2011.

Roy Alyette Durham, II, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Michael John Marsch, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, for appellee.

Opinion of the Court by Justice
ABRAMSON.

Linvil Curtis Turpin appeals as a matter of right from a Judgment of the Casey Circuit Court convicting him of possession of a firearm by a convicted felon, in violation of Kentucky Revised Statute (KRS) 527.040. Turpin was also found to be a

first-degree persistent felony offender and was sentenced accordingly to a maximum term of twenty years in prison. On appeal, Turpin maintains that his twenty year sentence is so disproportionate to his offense that it violates his right under the Eighth Amendment to the Constitution of the United States and Section 17 of the Kentucky Constitution not to be subjected to cruel and unusual punishment. Convinced that Turpin's sentence does not exceed what our Constitutions allow, we affirm.

### RELEVANT FACTS

The proof at Turpin's trial established that Turpin's elderly mother owns and resides on a farm adjoining Shuck's Creek Road outside of Liberty, Casey County, Kentucky. At the time of the incidents giving rise to this matter, Turpin was living in a trailer on his mother's property about 300 feet from his mother's house. In early July 2009, Turpin's mother phoned Turpin's brother, John Turpin, and asked him to come to her house. When John arrived, he found Turpin, apparently intoxicated and only semi-conscious, lying on the floor. John helped Turpin to a couch and eventually, over Turpin's objection it seems, summoned an ambulance. Turpin was taken to the hospital, examined, and released. A few days later, on July 6, 2009, John again came to his mother's house. He testified that he and his then girlfriend, his wife-to-be, Mary Ann Cochran, were delivering soft drinks and a money order to his mother, and that he was concerned that Turpin would be angry with him for having intervened on the earlier occasion. As they drove down the driveway to his mother's house, according to John, whose testimony was corroborated by that of Mary Ann, they passed Turpin sitting in his van and he gave them a dirty look. John testified that Turpin

again appeared to be intoxicated. A few minutes later, when John came out of his mother's house, Turpin swore at him and ordered him to leave the property. John responded, briefly followed Turpin into Turpin's trailer, came out, got into his pickup truck, and, as he and Mary Ann were pulling away, saw Turpin standing behind them pointing a rifle at the back of the truck. The couple sped off as fast as they could, and as they did, John and Mary Ann both testified, they heard two "pops" from the rifle.

John testified that he went straight to the office of the Casey County Sheriff and lodged a complaint against his brother. The next morning, July 7, 2009, the Sheriff and one of his deputies went to Turpin's residence to arrest him. Both officers testified that Turpin was outside when they arrived and that when he asked to be allowed to retrieve something from his trailer, they followed him inside and immediately saw an SKS army rifle leaning upright against the wall next to the bed. The deputy seized the gun and found it loaded, one round in the chamber and one in the magazine. Although the officers did not attempt to trace the gun, Turpin and John both testified that it belonged to their mother, a gift years before from a friend.

In August 2009, a Casey County grand jury indicted Turpin for wanton endangerment, two counts, and for illegally possessing the rifle as a convicted felon. The grand jury also indicted Turpin as a persistent felony offender (PFO) in the first degree. The Commonwealth offered to dismiss the PFO count in exchange for Turpin's guilty plea to the other three counts and his acceptance of consecutive two-and-a-half year sentences for each, for a total sentence of seven-and-a-half years. Maintaining his innocence, however, Turpin declined the offer.

The firearm possession count was severed from the wanton endangerment counts and, as noted, was tried separately in July 2010. During trial, after John and Mary Ann had testified about their July 6, 2009 encounter with Turpin outside his trailer, the Commonwealth renewed its plea offer. The court and counsel all explained to Turpin the risk he ran of a sentence at least ten years long and possibly as long as twenty years if he continued with the trial. At that point, Turpin indicated that he was ready to accept the plea bargain. The court then undertook a plea colloquy, and in the course of it, when the court inquired of Turpin if he was pleading guilty because he was in fact guilty, Turpin again vehemently asserted his innocence. Thereupon the court assured him that he was entitled to plead his case to the jury, and Turpin decided to go on with the trial. When the Commonwealth completed its proof, Turpin testified. He denied that he had pointed the rifle at his brother, had fired it, or indeed had had anything to do with it. He conceded that the officers found it in his trailer, but he claimed to have no idea how it got there.

In addition to the testimony summarized above, the Commonwealth presented proof, during the guilt phase of trial, that in 1999 Turpin pled guilty to a fourth Driving Under the Influence charge, a felony for which he was sentenced to eighteen months in prison. During the trial's penalty phase, the Commonwealth offered proof that in 1993 Turpin, who was over twenty-one years of age at the time, was convicted of felony theft by unlawful taking, another crime for which he was sentenced to eighteen months in prison, and that in 2004 he was sentenced to thirty months in prison upon his conviction for flagrant non-support. The jury found Turpin guilty of being a convicted felon in possession of a firearm, a class D felony,

the lowest class, and recommended a sentence of five years in prison for that crime. The jury also found that Turpin was a first-degree persistent felony offender and recommended that his sentence be enhanced to twenty years, the maximum enhancement for one presently convicted of a class D offense. As noted, the trial court sentenced Turpin in accord with the jury's recommendations.[1] Turpin maintains that the twenty-year sentence is unconstitutionally excessive given the remoteness of two of his prior offenses, the relatively minor nature of all of his offenses, and the Commonwealth's own recognition, as evidenced by its plea offer, that a shorter sentence is appropriate. We disagree.

## *ANALYSIS*

We begin our discussion by noting, as Turpin concedes, that this issue was not presented to the trial court, and thus our review is for palpable error alone under Kentucky Rule of Criminal Procedure (RCr) 10.26. Turpin is entitled to relief only if, despite the lack of preservation, the "unlawfulness" of his sentence is something that should have been apparent to the trial court and then only if the prejudice to Turpin is such that the failure to correct the error would constitute a manifest injustice. *Brown v. Commonwealth,* 313 S.W.3d 577, 595 (Ky.2010). Because we agree with the Commonwealth that Turpin's sentence is not unlawful, much less palpably so, Turpin is not entitled to relief.

■ Turpin does not dispute the validity of his prior convictions or his status, pursuant to KRS 532.080, as a first-degree persistent felony offender. Under that statute, "[a] person who is found to be a persistent felony offender in the first de-

gree shall be sentenced to imprisonment as follows: ... If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not .be less than ten (10) years nor more than twenty (20) years." KRS 532.080(6)(b). Although lawful under this statute, Turpin contends that his sentence is so disproportionate to his offenses, present and past, that it violates his constitutional right not to be subjected to cruel and unusual punishment.

■ The United States Supreme Court recently summarized its holdings in this area and explained that the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," prohibits not only barbaric punishments such as torture, but also punishments disproportionate to the crime. *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). This "proportionality principle," the Court cautioned, is narrow and " 'does not require strict proportionality between crime and sentence' but rather forbids only extreme sentences that are 'grossly disproportionate' to the crime.' " 130 S.Ct. at 2021 (quoting from *Harmelin v. Michigan,* 501 U.S. 957, 997, 1000–1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). In determining whether this principle has been breached in a particular case,

> [a] court must begin by comparing the gravity of the offense and the severity of the sentence.... "[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality" the court should then compare

---

1. Shortly thereafter, Turpin pled guilty to the two wanton endangerment charges for which he received five years imprisonment on each

to run concurrently with the twenty-year sentence he has appealed.

the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.... If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

130 S.Ct. at 2022 (quoting from *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680).

As Turpin notes, in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court invalidated as grossly disproportionate a recidivist sentence of life without parole where the predicate offense and all the underlying offenses were nonviolent and relatively minor. The Court has upheld, however, recidivist sentences only slightly less extreme than life without parole, even for minor predicate offenses. In *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the Court upheld a sentence of twenty-five years to life for the theft of a few golf clubs; and in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court upheld a sentence of life with the possibility of parole for the obtaining of $120.75 by false pretenses. The two underlying offenses in *Rummel* were also relatively minor check and credit-card frauds. Nevertheless, the Court upheld Rummel's life sentence and emphasized that recidivism is a serious problem, the response to which is peculiarly a matter of legislative policy.

Here, Turpin's twenty-year recidivist sentence with the possibility of parole in no more than four years, while harsh, perhaps, in the eyes of some given the nature of Turpin's crimes, is simply not an extreme sentence; it does not approach the upper limits of Kentucky's sentencing structure. Nor can it be deemed "grossly disproportionate" as the Supreme Court has employed that term, since according to the Court even a life sentence for crimes less harmful than Turpin's and posing less risk of violence cannot be characterized as "grossly disproportionate."[2]

We reached the same conclusion in *Riley v. Commonwealth*, 120 S.W.3d 622 (Ky. 2003), a case, like this one, in which the defendant received a twenty-year PFO sentence predicated on a relatively minor offense—possession of marijuana, a misdemeanor elevated to a Class D felony by virtue of the defendant's concurrent possession of a handgun. Upholding the sentence, this Court noted, first, that Section 17 of the Kentucky Constitution accords protections parallel to those accorded by the Eighth Amendment to the U.S. Constitution. As to "cruel punishment," the *Riley* Court observed "if the punishment is within the maximum prescribed by the statute violated, courts generally will not disturb the sentence." 120 S.W.3d at 633. Finally, the Court further noted, under the Eighth Amendment, the Supreme Court's general approval of enhanced recidivist sentencing, and that the maximum twenty-year enhancement for Class D felonies in Kentucky is not out of line with the enhancements allowed in other states for comparable crimes.

Turpin would avoid this precedent by referring us to recent unpublished cases from the Court of Appeals in which defendants with arguably more serious underlying offenses than his received somewhat

---

2. With respect to the potential harm and violence associated with Turpin's conduct, we reiterate that Turpin had not been convicted of the wanton endangerment charges at the time of sentencing. Any references to the non-violent nature of his crimes is not a reference to those particular offenses which Turpin pled guilty to after the sentencing at issue on this appeal.

shorter PFO sentences. The Commonwealth counters by citing a recent case from this Court in which a defendant convicted of Turpin's crime—the possession of a firearm by a convicted felon—was also sentenced to twenty years as a PFO. These comparisons are marginally helpful at best. Turpin would have us engage in so strict a proportionality review that jury sentencing, with its innumerable variables, could not stand up to it. That is not what either the state or the federal constitution requires. That one jury may have been lenient does not invalidate what may be another jury's harshness. As noted above, the U.S. Constitution "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 130 S.Ct. at 2021 (internal quotation marks omitted). As Turpin's sentence was neither extreme within our sentencing scheme nor grossly disproportionate for a third felony, however "soft" those felonies may have been, he is not entitled to relief.

### CONCLUSION

In sum, both the Eighth Amendment to the United States Constitution and Section 17 of the Kentucky Constitution prohibit cruel and unusual punishments, a prohibition that extends to extreme sentences grossly disproportionate to the offense being punished. The sentence meted out in this case—a twenty-year PFO sentence—does not run afoul of that prohibition, notwithstanding the fact that all of the crimes giving rise to the sentence were Class D felonies and can be characterized as nonviolent. The sentence is within the range authorized by the General Assembly for three-time offenders and is neither so long as to be deemed extreme nor so harsh in the context of a third offense as to be deemed grossly disproportionate. Accord-

ingly, we affirm the July 23, 2010 Judgment of the Casey Circuit Court.

All sitting. All concur.