Anthony **THORNTON**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2011–SC–000425–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

Rehearing Denied March 20, 2014.

Daniel T. Goyette, Louisville Metro Public Defender of Counsel, James David Niehaus, Deputy Appellate Defender, Counsel for Appellant.

Jack Conway, Attorney General, Todd Dryden Ferguson, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Anthony Thornton, appeals from a judgment of the Jefferson Circuit Court convicting him of third-degree assault, third-degree criminal mischief, and being a first-degree persistent felony offender, and sentencing him to twenty years' imprisonment.

As grounds for relief Appellant contends that (1) palpable error occurred when the trial court failed to instruct the jury consistently with KRS 501.030, which requires that to be found guilty of a criminal offense the defendant must have engaged in a voluntary act which he was physically capable of performing; (2) palpable error occurred when the trial court failed to instruct on the burden of proof in relation to his insanity defense instruction; (3) palpable error occurred when the trial court failed to instruct the jury regarding his right not to testify during the penalty phase; (4) the final sentencing was unfair and denied him the benefit of KRS 532.070, which permits a trial court to modify an unduly harsh felony sentence; and (5) that the persistent felony offender enhanced twenty-year sentence imposed in this case for the third-degree assault conviction is arbitrary and, therefore, in violation of Section 2 of the Kentucky Constitution.

For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Officers Darren Gibson and Laron Stoner were transferring Appellant within the Metro Corrections Center when he resisted their efforts and, without warning, punched Gibson in the face, bruising his cheek. As a result of the altercation, Appellant was charged with third-degree assault, third-degree criminal mischief,[1] and of being a first-degree persistent felony offender. At trial, Appellant's defense was diminished mental capacity, and instructions on not guilty by reason of insanity and guilty but mentally ill were given. The jury found Appellant guilty of all charges and recommended, as relevant here, a one-year sentence on the third-degree assault charge, enhanced to twenty years as a result of the persistent felony offender conviction.[2] A hearing date was set for the final sentencing. Appellant moved for a new trial.

Presiding Judge Barry Willett was temporarily unavailable for the final sentencing, and so Senior Judge Geoffrey Morris was assigned to the case. At the sentencing hearing, Appellant asked Judge Morris to exercise his discretion and reduce the twenty-year sentence recommended by the

1. The radio carried by Officer Stoner was damaged in the scuffle.

2. The jury recommended a thirty-day sentence on the misdemeanor charge of third-degree criminal mischief, which as a matter of law must be served concurrently with the felony sentence imposed. KRS 532.060; KRS 532.090; KRS 532.110.

jury. The prosecutor objected to the imposition of a lesser sentence. Judge Morris imposed the recommended sentence, but upon doing so he suggested that Appellant could file a post-sentencing motion seeking reconsideration of the sentence, so that Judge Willett, who was more familiar with the case, could consider the request for a lesser sentence. Appellant followed that suggestion. Judge Willett, however, denied the motion without a hearing. This appeal followed as a matter of right pursuant to Ky. Const. § 110.

## II. THE FAILURE TO INSTRUCT REGARDING KRS 501.030

Appellant first contends that a manifest injustice occurred because the trial court did not provide the jury with an instruction based upon the voluntary act concept embodied in KRS 501.030(1). KRS 501.030 is a general provision of the Kentucky Penal Code that says, in pertinent part, "A person is not guilty of a criminal offense unless: (1) He has engaged in conduct which includes a voluntary act[.]" A "voluntary act" is defined in KRS 501.010(3) as "a bodily movement performed consciously as a result of effort or determination[.]" Thus, Appellant could not have been guilty of assault if the blow he struck to Officer Gibson's face was not the conscious result of Appellant's effort and determination.

The evidentiary basis upon which Appellant grounds his claim that such an instruction should have been given was the testimony of his expert psychological witness, Dr. Herner. Dr. Herner opined that Appellant suffered from mental illness and a diminished mental capacity, and that testimony supported the insanity defense upon which Appellant requested and received a specific jury instruction on insanity.

The *Kentucky Crime Commission/LRC Commentary to KRS 501.030* (1974) explains the intent and purpose of KRS 501.030 as follows:

The main purpose of this provision is to confirm and codify several common law principles of universal acceptance. By requiring a voluntary act or a failure to perform a legal duty, subsection (1) intends to remove from the field of criminal liability all social harms resulting from involuntary acts as well as those resulting from failures to perform moral, yet non-legal, duties. For example, if someone should push the defendant against a third person causing the latter to fall from a boat into a river, the defendant could not be held responsible for the death by drowning of the third person. Likewise, although another person motionlessly observes the drowning when he could have prevented it without risk to himself, he has not committed an offense since he had no legal duty to act. By requiring that every defendant have a culpable mental state, subsection (2) intends to remove from criminal liability social harm resulting from accidental happenings.

■ The clear import of KRS 501.030 is to establish that involuntary movements, such as reflexes or convulsions, bodily movements during unconsciousness or sleep, and conduct during hypnosis or resulting from hypnotic suggestion, are exempted from criminal responsibility. *See Kentucky Crime Commission/LRC Commentary to KRS 501.030* (1974). "Since acts such as these do not consciously result from effort or determination of the actor, criminality should not attach even though a culpable mental state might be shown." *Id.*

Appellant concedes that he did not preserve this issue for appellate review pursuant to RCr 9.54(2), which in relevant part provides: "No party may assign as error the giving or the failure to give an instruc-

tion unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction[.]" Appellant requests palpable error review under RCr 10.26. We decline to do so.

In *Martin v. Commonwealth,* 409 S.W.3d 340, 344 (Ky.2013), an opinion we also render today, we explained that RCr 9.54(2) precludes appellate review, even under the palpable error standard of RCr 10.26 for unpreserved assignments of error based upon the "giving or the failure to give an instruction." We differentiated between unpreserved errors in the giving or the failure to give an instruction, and unpreserved errors consisting of defects in instructions otherwise appropriately given. RCr 9.54(2) was applicable only to the former, and hence, palpable error review remained available for the latter.

Appellant's claim of error—the failure to give a specific instruction rather than a flaw in an instruction otherwise properly given—falls squarely within the requirements of RCr 9.54(2). Appellant urges this Court to find error in the trial court's failure to provide the jury with an instruction that he never requested. We recently said, in *Bartley v. Commonwealth,* that "[i]t is not an error, however, palpable or otherwise, for the trial court not to instruct on a lesser included offense that has not been requested." 400 S.W.3d 714, 731 (Ky.2013) (citing *Commonwealth v. Varney,* 690 S.W.2d 758, 759 (Ky.1985)). We now say the same thing with respect to the special instruction on the requirement that, to be a criminal act, Appellant's conduct must have been shown to be the conscious result of his effort or determination. Not only did Appellant fail to raise this rather unique issue in the trial court, he fails on appeal to suggest how such an unconventional instruction should have been phrased. Pursuant to RCr 9.54(2), we decline further consideration of the matter.

## III. THE FAILURE OF THE INSTRUCTIONS TO ASSIGN THE BURDEN OF PROOF ON THE INSANITY DEFENSE INSTRUCTION

Appellant next contends that palpable error occurred because the jury was not instructed that the Commonwealth had the burden of proving beyond a reasonable doubt that Appellant was not insane when the offense occurred. The insanity instruction provided by the trial court made no reference at all to the burden of proof on the issue of insanity. It is worth noting that Appellant's theory concerning the burden of proof requirement is not based upon a specific holding of this Court or a specific statutory provision. Rather, it is based upon an extensive historical analysis of amendments to our insanity statutes which, he now contends, removed insanity from the category of affirmative defenses where the defendant bears the burden of proof, and shifted it to the elements of a crime. He argues that when insanity is raised by the defendant, the Commonwealth bears the burden of disproving it beyond a reasonable doubt.

Our review of the insanity instruction tendered by Appellant discloses that it is substantially identical to the instruction given by the trial court, with both, in turn, modeled upon the form instruction contained in 1 William S. Cooper & Donald P. Cetrulo, *Kentucky Instructions to Juries (Criminal)* § 11.31 (5th ed.2012). Therefore, if the instruction given was actually erroneous, Appellant not only failed to preserve the error by making the concern known to the trial court, he *invited* the error by affirmatively proposing an instruction that contains the very defect he now opposes. In *Quisenberry v. Commonwealth,* we examined the Supreme Court of the United States' distinction "between forfeited errors, which

are subject to plain error review, and waived errors, which are not." 336 S.W.3d 19, 37–38 (Ky.2011) (citing *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). We recognized that "invited errors that amount to a waiver, *i.e.*, invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review." *Id.* (*citing United States v. Perez*, 116 F.3d 840 (9th Cir.1997)). Because Appellant himself proposed the insanity instruction, which was ultimately given, his right to appellate review of the claimed instructional error was relinquished.

■ In any event, this Court has repeatedly held that the burden of proof on insanity does not shift to the Commonwealth. In fact, we recently dealt with this issue in *Star v. Commonwealth*, and reaffirmed this principle, noting the longstanding rule in Kentucky is that "[t]he burden of proof as to the question of a defendant's sanity at the time of a homicide never shifts from the defendant." 313 S.W.3d 30, 35 (Ky.2010) (citing *Wainscott v. Commonwealth*, 562 S.W.2d 628 (Ky. 1978)). Indeed, this has been the rule since at least 1978. *See Wainscott*, 562 S.W.2d at 631 ("That burden never shifts. It was incumbent on [the defendant] to prove his insanity."). We see no justification for altering the rule now under the circumstances presently before the court in this case.

## IV. THE FAILURE TO INSTRUCT ON A DEFENDANT'S RIGHT NOT TO TESTIFY DURING THE PENALTY PHASE

■ Appellant next contends that a manifest injustice occurred because the tri-

al court failed to *sua sponte* instruct the jury concerning a defendant's right not to testify during the penalty phase of the trial. Again, Appellant concedes that the issue is not preserved because of his failure to tender an instruction pursuant to RCr 9.54(2), but again, he requests palpable error review pursuant to RCr 10.26. For the reason stated above, and more fully explained in *Martin*, 409 S.W.3d 340, we decline. Furthermore, RCr 9.54(3) [3] conditions the entitlement to such an instruction upon a specific request by the defendant. We are well aware that some defendants in a criminal trial prefer, and therefore request, a specific instruction on the right to remain silent; others under the same circumstances prefer not to bring to the jury's attention their decision not to testify. When the defendant fails to request the instruction pursuant to RCr 9.54(3), neither a trial court nor an appellate court can know if the decision was a purposeful or a negligent omission. Accordingly, Appellant is not entitled to consideration of the issue on appeal under RCr 10.26.

## V. FAIRNESS OF THE FINAL SENTENCING AND KRS 532.070

After presiding over Appellant's trial, Judge Willett was not able to appear for the final sentencing hearing. Senior Judge Morris appeared in his place. Judge Morris rejected Appellant's request for a reduction of the enhanced twenty-year sentence recommended by the jury. Apparently in deference to Judge Willett, whose detailed knowledge of the case sur-

---

3. RCr 9.54(3): "The instructions shall not make any reference to a defendant's failure to testify unless so requested by the defendant, in which event the court shall give an instruction to the effect that a defendant is not com- pelled to testify and that the jury shall not draw any inference of guilt from the defendant's election not to testify and shall not allow it to prejudice the defendant in any way."

passed his own, Judge Morris suggested that Appellant could move for reconsideration of the sentence pursuant to KRS 532.070. Upon resumption of his duties in the case, Judge Willett would then independently consider the question upon review of the motion. Appellant filed the motion as suggested, but Judge Willett declined to alter the sentence. Appellant now contends that neither of the judges involved in his sentencing undertook the deliberate and conscientious exercise of judicial discretion for meaningful sentencing required by KRS 532.070.[4]

Appellant compares his situation to the sentencing process we condemned in *Edmonson v. Commonwealth*, 725 S.W.2d 595 (Ky.1987).[5] In *Edmonson*, the trial court had prepared the final judgment ahead of time on a pre-printed form and the blanks had been filled in at the time of the hearing. In reversing the judgment we noted that the "trial judge had either made up her mind [before the hearing] as to the sentence which would be imposed, or she had tentatively decided what sentence to impose unless the defendant came forward with some compelling reason for leniency[,]" thereby neglecting the duties imposed by KRS 532.050, KRS 532.110, and RCr 11.02. *Id.* at 596.

Appellant argues that Judge Morris's lack of knowledge about the crime pre-vented him from fairly considering Appellant's motion for a new trial. He also contends that by simply imposing the twenty-year sentence recommended by the jury, and advising counsel to file a motion to reconsider with Judge Willett, Judge Morris gave no real consideration to the sentencing decision.

Appellant followed Judge Morris's advice and filed a motion for reconsideration of his sentence and his motion for a new trial. He made the same arguments for leniency that he made at the sentencing hearing: that the bruised cheek suffered by Officer Gibson was simply too insignificant to justify a twenty-year sentence. Judge Willett denied the motions.

■ We are not persuaded by our review of the record that Appellant was denied a meaningful judicial sentencing. There is no indication that the judges failed to fully consider the nature and circumstances of Appellant's crimes, the history and character of Appellant, and the severity of the sentence recommended by the jury. Appellant cites only to the brevity of Judge Morris's hearing, but that does not establish the lack of full and fair judicial consideration. Accordingly, we conclude that Appellant is not entitled to relief under this argument.

4. KRS 532.070 provides as follows:
    (1) When a sentence of imprisonment for a felony is fixed by a jury pursuant to KRS 532.060 and the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that the maximum term fixed by the jury is unduly harsh, the court may modify that sentence and fix a maximum term within the limits provided in KRS 532.060 for the offense for which the defendant presently stands convicted.
    (2) When a sentence of imprisonment for a Class D felony is fixed by a jury pursuant to

KRS 532.060 and the trial court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that it would be unduly harsh to impose such a sentence, the court may sentence the defendant to a definite term of imprisonment in a county or a regional correctional institution for a term of one (1) year or less.

5. *Superseded on other grounds by statute as stated in Maynes v. Commonwealth*, 361 S.W.3d 922, 929–30 (Ky.2012).

## VI. COMPLIANCE OF SENTENCE WITH SECTION 2 OF THE KENTUCKY CONSTITUTION

Finally, Appellant contends that his twenty-year enhanced sentence is a violation of Section 2 of the Kentucky Constitution, which provides that "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." In substance, Appellant contends that his sentence is so excessive in relation to his conduct so as to render it unconstitutional.

■ Appellant brings this argument under Section 2, bypassing the prohibitions of "cruel punishment" found in Section 17 of the Kentucky Constitution and the prohibition of "cruel and unusual punishments" found in the Eighth Amendment of the U.S. Constitution. In *Turpin v. Commonwealth*, we noted that the Constitutional provisions prohibit, "not only barbaric punishments such as torture, but also punishments disproportionate to the crime." 350 S.W.3d 444, 447 (Ky.2011) (citing *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)).

■ The body of law developed through our analysis of the "cruel and unusual punishments" provisions does not provide fertile grounds for Appellant's concern about the harshness of his sentence. Appellant's counsel is no doubt aware, as are we, that "proportionality review has never (or hardly ever) been used to strike down a mere prison sentence." *Hampton v. Commonwealth*, 666 S.W.2d 737, 741 (Ky.1984) (citing *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)); *see also Riley v. Commonwealth*, 120 S.W.3d 622, 633 (Ky.2003) ("if the punishment is within the maximum prescribed by the statute violated, courts generally will not disturb the sentence."). Thus, the relief sought by Appellant is seldom, if ever, available under a cruel and unusual punishment claim.

The gist of Appellant's argument is, therefore, that his sentence was arbitrarily imposed by a jury motivated by "passion and prejudice" and a judiciary motivated by indifference. As authority for his argument, Appellant cites *Sanitation District No. 1 v. City of Louisville*, 308 Ky. 368, 213 S.W.2d 995 (1948) and *Kentucky Milk Marketing & Antimonopoly Comm'n v. Kroger Co.*, 691 S.W.2d 893 (Ky.1985), both of which offer a rather expansive interpretation of Section 2, but neither of which provides guidance in applying Section 2 in the context of a criminal case. *Kentucky Milk Marketing*, citing *Sanitation District No. 1*, provides:

> Whatever is contrary to democratic ideals, customs and maxims is arbitrary. Likewise, whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary. . . . Section 2 is broad enough to embrace the traditional concepts of both due process of law and equal protection of the law. Unequal enforcement of the law, if it rises to the level of conscious violation of the principle of uniformity, is prohibited by this Section. The question of reasonableness is one of degree and must be based on the facts of a particular case.

691 S.W.2d at 899 (citations omitted).

While we may not entirely endorse the full scope of *Kentucky Milk Marketing's* articulation of Section 2, we cannot conclude that Appellant's sentence offends the principles detailed therein. The essence of Section 2 is to bridle "[a]bsolute and arbitrary power" that may be flexed "even [by] the largest majority" against a minority, even a minority of one.

■ Appellant offers nothing that indicates that he has been arbitrarily singled out for severe punishment. He contextu-

alizes the harshness of his twenty-year sentence by pointing out that, before enhancement by his status as a persistent felony offender, the just punishment assessed by the jury for his crime was only one year. He concedes, however, that "[t]he sentencing evidence showed that he was almost always in trouble with the law." Regardless of what we may think about the severity of his sentence, we must conclude that it is consistent with statutes duly and democratically enacted, and applicable to all. Nothing in the record before us suggests that Appellant has been subjected to unequal, disparate, or arbitrary treatment.[6] As such, Appellant's twenty-year sentence for the conduct involved invokes no sense of fundamental unfairness and it does not constitute an exercise of "[a]bsolute and arbitrary power" as proscribed by Section 2 of the Kentucky Constitution.

## VII. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

---

6. Appellant's enhanced twenty-year sentence for the Class D felony of assaulting a police officer is simply not an extreme sentence. See KRS 508.025(2) (defining third-degree assault as a Class D felony); KRS 532.080(6)(b) (setting sentencing range for conviction for a Class D felony for a first-degree persistent felony offender at ten to twenty years). We reached the same conclusion in *Riley v. Commonwealth,* a case in which the defendant received a twenty-year enhanced sentence predicated on arguably a more minor offense than involved in this case-possession of marijuana, normally a misdemeanor, elevated to a Class D felony only by virtue of the defendant's concurrent possession of a handgun. 120 S.W.3d 622 (Ky.2003). We noted in *Riley* the Supreme Court of the United States' general approval of enhanced recidivist sentencing under the Eighth Amendment, and that the maximum twenty-year enhancement for Class D felonies in Kentucky is not out of line with the enhancements allowed in other states for comparable crimes. *Id.* at 633–34. *See also Turpin v. Commonwealth,* 350 S.W.3d 444 (Ky.2011).