# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



**Supreme Court of Kentucky**

2015-SC-000388-MR

DATE 5-26-16 Ella Grow..H, P.C.

JAMES DEE LANHAM                                                        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.            HONORABLE OLU ALFREDO STEVENS, JUDGE
NO. 12-CR-2979

COMMONWEALTH OF KENTUCKY                                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Between the dates of January 15, 2012, through September 8, 2012, the Appellant, James Dee Lanham committed a series of sexual assaults and other sex crimes against three minor girls. The majority of the crimes involved a young girl named Amy,[1] who was less than twelve years old when the crimes occurred. The other two victims, Heather and Elizabeth, were less than sixteen years old at the time of the crimes. Another minor girl, Katie, testified at trial as having witnessed sexual acts between Lanham and Amy. She was seventeen at the time she testified.

After Lanham was arrested and indicted, his home was searched, revealing several items of evidence that will be discussed as necessary.

---

[1]    Pseudonyms are being used to protect the anonymity of all the child victims.

A Jefferson Circuit Court jury convicted Lanham on four counts of rape, two counts of sodomy, five counts of promoting sexual performance by a minor, four counts of first-degree sexual abuse, and three counts of distribution of obscene matter to minors. The jury acquitted Lanham on one count of distribution of obscene matter to minor that involved Katie.

The jury recommended a sentence of 30 years' imprisonment for each rape conviction, 30 years for each sodomy conviction, 15 years for each promoting sexual performance by a minor conviction, seven years for each first-degree sexual abuse conviction, and three years for each distribution conviction. The jury further recommended that the sentences involving crimes against Amy shall run concurrently with each other, for a total sentence of 30 years. It also recommended that the sentences involving crimes against Heather shall run concurrently with each other for a total sentence of 15 years. The sentences involving crimes against Elizabeth were recommended to run concurrently with each other for a total sentence of 15 years. The sentences against each of the three victims were to run consecutively for a total sentence of 60 years' imprisonment. The trial court accepted the jury's recommendation. Lanham now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Five issues are raised and addressed as follows.

## Missing Evidence

One of the items of evidence discovered by police at Lanham's home was a miniature baseball bat that Amy claims was used by Lanham to vaginally

2

penetrate her. She testified that the bat was "medium sized" and held her hands out slightly wider than her shoulders. The Commonwealth presented a picture of the bat to the jury but could not produce the actual bat itself. Lanham argues that he was entitled to a missing evidence instruction and that the Commonwealth's failure to introduce the bat into evidence violated his right to due process. More specifically, he contends that due to the bat's size and lack of blood, as well as the absence of any internal injuries to Amy, the bat was relevant to Amy's credibility. According to Lanham, "[t]he entire case rested on the credibility of the girls, and mainly that of [Amy]."

## Due Process

"In order to establish a due process violation, the evidence must either be intentionally destroyed, or destroyed inadvertently outside normal practices." *Tamme v. Commonwealth*, 759 S.W.2d 51, 54 (Ky. 1988). "Furthermore, the lost evidence must 'possess an exculpatory value that was apparent before it was destroyed.'" *Id.* (citing *California v. Trombetta*, 467 U.S. 479, 489 (1984)). The photograph of the bat that was presented to the jury contained a measuring device that was situated alongside the bat in order to demonstrate scale. However, the units of measure are difficult to discern from that photo. During deliberations, the jury posed the question: "how many centimeters are in one inch?" Lanham claims that this is a clear indication that the jury was confused as to the bat's dimensions. The court responded to the jury: "you have all the evidence that you are going to receive in this matter."

3

Lanham also cites the trial testimony of Dr. Lisa Fitzer, who testified at trial concerning her sexual assault examination of Amy. Dr. Fitzer testified that Amy had a "normal exam." In response to questioning by defense counsel, however, Dr. Fitzer also testified that she would not necessarily expect to see physical signs that the bat was inserted into Amy's vagina. It is also noteworthy that Amy's examination occurred almost one month after the allegation of sexual abuse. In referencing female child patients generally, Dr. Fitzer testified that "time passes, the body heals, and [the patients] usually look pretty good on the exam." Forensic evidence was also introduced indicating that the bat contained Amy and Lanham's DNA.

During a hearing on the missing evidence issue, which occurred during trial, the Commonwealth introduced the testimony of Abigail Freedman. Ms. Freedman is the civilian supervisor of the Louisville Metro Police Department ("LMPD") property room. She testified that the bat and two cigar tubes were logged into the property room and were not logged out. Ms. Freedman further testified that all three of those items, the bat and two cigar tubes, were in the property room but could not be located. Like the miniature bat, the evidence presented at trial indicated that Lanham used a cigar tube to penetrate Amy vaginally. One of his rape convictions involved the bat and another involved the cigar tubes.

Although the failure of the LMPD and the Commonwealth to ascertain the location of the bat may have been negligent, Lanham has failed to provide any evidence that the bat was "intentionally destroyed, or

4

destroyed inadvertently outside normal practices." *Tamme,* 759 S.W.2d at 54 (citation omitted). Moreover, Lanham has failed to present convincing evidence that the bat possessed "exculpatory value that was apparent before it was destroyed[,]" or in this case, misplaced. *Id. See also Swan v. Common*wealth, 384 S.W.3d 77, 90 (Ky. 2012) ("Speculation is not exculpation as required by *Tamme* and *Trombetta* . . . ."). As previously stated, the Commonwealth presented evidence that the bat contained Amy and Lanham's DNA. Of course, this proof is not exculpatory.

Furthermore, the two cigar tubes were also missing from the physical evidence that was presented to the jury. Yet, Lanham did not take issue with the absence of those items. Therefore, the jury was presented with additional evidence that the bat was used in the manner in which Amy testified, and that items other than the bat were also used in a similar manner. Both of these facts would have bolstered Amy's credibility regarding her testimony that Lanham used the bat to penetrate her in a sexual manner. There was no due process violation here.

### Missing Evidence Instruction

Similar to our preceding due process analysis, any negligence or inadvertence on the part of the Commonwealth or the LMPD negates a finding of bad faith. *Ordway v. Commonwealth,* 391 S.W.3d 762, 793 (Ky. 2013) ("[w]hen it is established that the evidence was lost due to mere negligence or inadvertence, which, in effect, negates a finding of bad faith, the missing instruction should not be given.") (citations omitted). Lanham has failed to

present evidence that the alleged omissions of the Commonwealth and/or the LMPD in failing to present the bat at trial were intentional or done in bad faith. Nor does his unsupported claim of "extreme negligence" satisfy this standard. Therefore, a missing evidence instruction was not warranted.

## Fifth Amendment Claim

For his next assignment of error, Lanham raises two alleged violations of his right not to testify against himself that is preserved by the Fifth Amendment of the federal constitution, as well as Kentucky law. KRS 421.225. First, he claims that, during voir dire, the prosecutor impermissibly referenced the possibility that Lanham may choose not to testify during trial. He also asserts that the jury instructions impermissibly commented on his right not to testify against himself by drawing undue attention to that issue.

### *Voir Dire*

During voir dire, the prosecutor informed the venire panel that "if the defendant decides not to testify you can't consider it." She then asked the panel if everyone understood and agreed that "it's ok if he doesn't testify." Lanham's trial counsel moved to discharge the panel, which the court denied. Lanham does not develop his argument here beyond a facial claim that the prosecutor's statements constituted error. However, there was no error here. It is permissible and, in fact, common for defense counsel to ask these types of question during voir dire. And if defense counsel is permitted to ask these questions, then so can the Commonwealth.

## Jury Instruction

Lanham requested at trial that the court *not* instruct the jury on his Fifth Amendment right against self-incrimination, and that failure to testify cannot be construed as a presumption of guilt. In support, he cites RCr 9.54(3), which provides:

> The instructions shall not make any reference to a defendant's failure to testify unless so requested by the defendant, in which event the court shall give an instruction to the effect that a defendant is not compelled to testify and that the jury shall not draw any inference of guilt from the defendant's election not to testify and shall not allow it to prejudice the defendant in any way.

It appears that Lanham's request not to include the instruction was based on the prosecutor's previous statement concerning Lanham's decision not to testify, which, at the time was merely hypothetical. Lanham asserts that his reasoning for requesting that the court omit this instruction was a strategic decision not to draw attention to the prosecutor's statement. The trial court denied Lanham's request and the jury was presented with the contested instruction.

As Lanham correctly observes, this Court has previously acknowledged that it can be a valid trial strategy not to instruct the jury on the defendant's Fifth Amendment right not to testify. *Thornton v. Commonwealth*, 421 S.W.3d 372, 377 (Ky. 2013). In that case, the appellant argued that "manifest injustice occurred because the trial court failed to *sua sponte* instruct the jury concerning a defendant's right not to testify during the penalty phase of the trial." *Id.* We held that appellant was not entitled to palpable error review of

7

that issue. *Id.* Unlike *Thornton*, however, the issue in the present case was properly preserved, meaning that the court denied Lanham's explicit request that the instruction be omitted. Thus, we must now decide as a matter of first impression whether the court's denial of Lanham's request was error, and whether such error requires reversal.

In *Sargent v. Shaffer*, we held that "a trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion; the substantive content of the jury instructions will be reviewed *de novo.*" 467 S.W.3d 198, 204 (Ky. 2015). Here, the issue is whether the trial court erred in authorizing a specific instruction. Thus, we will review for an abuse of discretion. RCr 9.54(3) is clear: "[t]he instructions shall not make any reference to a defendant's failure to testify unless so requested by the defendant . . . ." While some ambiguity may exist where a defendant fails, for whatever reason, to request the instruction, no such instruction shall be given when a defendant unequivocally requests that the instruction be omitted. Although the trial court likely had the best interests of Lanham in mind when it declined Lanham's request to omit the contested instruction, the court nevertheless abused its discretion under our rules of criminal procedure. The issue now turns to the impact of this error on the judgment.

Before we address whether the error here was harmless, we must first address Lanham's claim that the trial court violated the Fifth and Fourteenth Amendments to the U.S. Constitution. If so, then we must determine whether

the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 23 (1967).

When faced with an identical issue, the U.S. Supreme Court held that "the giving of such an instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments." *Lakeside v, Oregon,* 435 U.S. 333, 340-41 (1978). Therefore, there is no violation of the federal constitution here. We will proceed to determine whether the trial court's error was harmless. RCr 9.24.

There was extensive testimonial and forensic evidence presented by the Commonwealth in support of its case. This included testimony from the victims. Moreover, the only real "error" here was the trial court's insistence that the jury be instructed *not* to prejudice Lanham for not testifying. There is no way that the judgment was substantially swayed by this error. *Winstead v. Commonwealth,* 283 S.W.3d 678, 688-89 (Ky. 2009). Thus, the trial court's instruction to the jury concerning Lanham's Fifth Amendment right not to testify was harmless.

### Mistrial

Lanham also argues that a mistrial was required when the prosecutor impermissibly attempted to define "reasonable doubt" during closing arguments. Slide shows accompanied the prosecutor's oral argument to the jury at closing. One slide was entitled "Reasonable Doubt." Another slide was entitled "Proof Beyond a Reasonable Doubt" and contained the following question: "Ask yourself: Do you believe he did it?" That slide also provided

9

that "Proof does not need to eliminate all possible or imaginary doubt." The prosecutor elaborated as follows: "But you do have to ask yourself, do I believe that this happened? It does not need to eliminate all possible doubt or imaginary doubt. It is not beyond a shadow of a doubt, or 100% sure."

Defense counsel objected to the prosecutor's comments and moved that the panel be discharged. The court denied the motion, sustained the objection defining reasonable doubt, and instructed the prosecutor to "move on from this slide." We will review his motion to "discharge the panel" as a motion for mistrial.

We must determine whether there was manifest necessity for a mistrial, and specifically whether the alleged error here "prejudice[d] [Lanham's] right to a fair trial." *Grimes v. McAnulty*, 957 S.W.2d 223, 224 (Ky. 1997) (citations omitted). It is also critical to note that "a finding of manifest necessity is a matter left to the sound discretion of the trial court." *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky. 2000). The trial court did not abuse its discretion here.

In support of his argument, Lanham cites *Rodgers v. Commonwealth*, 314 S.W.3d 745 (Ky. App. 2010). In that case, the Court of Appeals determined that the prosecutor's closing argument regarding reasonable doubt was inappropriate and required reversal, where the prosecutor told the jury that "[I]f you know he did it, then this case was proven." *Id.* at 748. However, the court also noted in *Rodgers* that "[o]ver time, our courts have narrowly refined the rule to construe as harmless error a statement that reasonable doubt does

10

not mean 'beyond all doubt.'" *Id.* at 748 (citing *Johnson v. Commonwealth,* 184 S.W.3d 544, 550–51 (Ky. 2005)). Unlike the present case, however, the Court of Appeals reversed in *Rodgers* because, "the Commonwealth bodaciously exceeded the *Johnson* limit that reasonable doubt does not mean beyond all doubt[.]" *Id.* The prosecutor's statements here were far from "bodacious." In fact, the comments at issue in the present case comport with the *Johnson* limitation. *See also, Brooks v. Commonwealth,* 217 S.W.3d 219, 225 (Ky. 2007); *Rogers v. Commonwealth,* 315 S.W.3d 303, 308 (Ky. 2010).

### Improper Testimony and Closing Argument

Lanham argues that the trial court erred by allowing impermissible testimony concerning child sexual abuse syndrome. This issue is unpreserved. Therefore, we will review for palpable error. RCr 10.26; *McCleery v. Commonwealth,* 410 S.W.3d 597, 606 (Ky. 2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

During direct examination, the Commonwealth questioned LMPD Detective Jennifer Boyer as follows: "In your experience as a crimes against children detective, is it more common to have delayed disclosure cases or fresh cases?" As previously stated, she responded that it is more common to have delayed cases. The prosecutor also referenced Det. Boyer's testimony during the Commonwealth's closing argument. The prosecutor stated as follows:

> We heard from the detective, Detective Boyer, who has been a crimes against children unit detective for three years, that a delayed disclosure case is the norm in her unit. That's because

11

> these children are normal. They believe they would get in trouble.
> They felt shame because of what they had done. And frankly that's
> why people prey on children.

Lanham correctly notes that we have previously held that using testimony regarding the symptoms of child sexual abuse syndrome, even without referring directly to the syndrome, is an impermissible way to bolster the prosecution's case. *Blount v. Commonwealth*, 392 S.W.3d 393, 396 (Ky. 2013). However, Lanham cites no authority from this Court that has held such errors to be palpable.

We recently addressed a similar issue in *King v. Commonwealth*, 472 S.W.3d 523, 527 (Ky. 2015). That case involved the trial court's admission of a police detective's testimony wherein he stated that the victim's delay in reporting the sexual abuse was not unusual because, in her experience with more than 1,500 cases, it was "very rare" for children to immediately report sexual abuse. *Id.* at 527. We held that, while obviously erroneous, the detective's testimony did not result in manifest injustice. *Id* at 528.

Having reviewed the relevant portions of Detective Boyer's testimony, we find no palpable error here. And while the contested statements made during the Commonwealth's closing argument may have been error, we cannot conclude that such error did not create the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). There was extensive testimonial and forensic evidence presented by the Commonwealth in

12

support of its case. This included testimony from the victims. There was no palpable error here.

## Cumulative Error

Lastly, Lanham argues that his conviction should be reversed on the basis of cumulative error. Under this limited doctrine, we will reverse only when the "individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Here, there is "insufficient harmless error to create a cumulative effect which would mandate reversal for a new trial." *Tamme v. Commonwealth*, 973 S.W.2d 13, 40 (Ky. 1998).

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court.

All sitting. Minton, C.J.; Cunningham, Keller, and Wright, JJ., concur. Hughes, Noble, and Venters, JJ., concur in result only.

COUNSEL FOR APPELLANT:

David Lambertus

Tricia Frances Lister

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General

13